**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**CASSANDRA A. KRUSE**
Emswiller Williams Noland & Clarke, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JAIMIE L. CAIRNS**
Ruppert & Schaefer, P.C.
Indianapolis, Indiana



FILED

May 31 2012, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FRED N. MARTINEZ, | ) | |
| | ) | |
| Appellant-Cross/Appellee, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1108-DR-359 |
| | ) | |
| SUSAN K. DEETER, | ) | |
| | ) | |
| Appellee-Cross /Appellant. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Robert W. Freese, Judge
Cause No. 32D01-0606-DR-95

**May 31, 2012**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Fred Martinez ("Father") appeals the trial court's child support modification order, and Susan Deeter ("Mother") cross-appeals the trial court's child support modification order. We affirm in part, reverse in part, and remand.

**Issues**

Father raises three issues on appeal, which we consolidate and restate as whether the trial court erred when it calculated child support owed by him for 2007. On cross-appeal, Mother raises four issues, which we consolidate and restate as:

I.    whether the trial court erred by including the children's Social Security survivor benefits in her weekly gross income for purposes of child support and post-secondary education expenses;

II.   whether the trial court erred by denying Mother's request for attorney fees; and

III.  whether the trial court erred by ordering that the child support arrearage owed by Father be paid first to Mother's attorneys.

**Facts**

In July 2002, Father and Mother divorced. Mother was awarded custody of the parties' three children, and Father was ordered to pay child support. Mother was disabled, and Mother and the children received Social Security payments based on Mother's disability. Mother subsequently remarried.

On March 20, 2007, Mother filed a petition to modify child support. In October 2007, the parties entered into an Agreed Entry that provided Father would pay child support to Mother in the amount of $387.00 per week commencing on March 20, 2007.

2

The parties noted that Father was "having an exceptional year in 2007 income wise as he [had] earned in excess of $292,000.00 year-to-date and his projected yearly income for 2007 [was] in excess of $314,000.00." Appellant's App. p. 23. For child support purposes, the parties "agreed to use $100,000.00 for [Father's] annual income," "compute what [Mother was] entitled to for 2007 from [Father's] irregular income consisting of bonuses and commissions," and "determine what percentage [Mother was] entitled to therein for 2007 and thereafter." Id. at 24. The parties also agreed that they would "report back to the Court by way of agreement or request a further hearing to determine what [Mother was] entitled to in regard to [Father's] excess income and in regard to attorney fees to be paid by [Father] on behalf of [Mother]." Id. at 25.

In August 2007, Mother's husband died, and she learned that she and the two youngest children qualified for Social Security survivor benefits ("survivor benefits"). However, they could not receive both survivor benefits and disability benefits, and they chose to receive the survivor benefits, which were more than the disability benefits.

In December 2007, Father filed a petition for modification of custody of the parties' oldest child. In April 2009, Father filed a petition for emancipation regarding the parties' oldest child. Evidentiary hearings were held in June 2009, December 2010, April 2011, and May 2011 regarding many issues, including child support for 2007 through 2011, the amount of Father's tax rate used to calculate his 2007 child support, custody and emancipation of the parties' oldest child, postsecondary education expenses, calculation of the parties' incomes, reimbursement of medical expenses, and attorney

3

fees. The trial court entered extensive findings of fact and conclusions thereon, including the following:

29. On October 3, 2007 the parties entered into an Agreed Entry modifying Father's child support obligation to $387.00 a week.

30. The 2007 Agreed Entry also provided that the "parties will compute what Wife is entitled to for 2007 from Husband's irregular income from 2007 consisting of bonuses and commissions.["]

31. Father's gross income in 2007 was $318,157.93.

32. Father's excess income over that for which child support was calculated is $218,157.93.

33. The Child Support Guidelines use a tax rate of 21.88% and provide that a court may deviate from guideline amounts when evidence is substantiated at the support hearing. See Indiana Child Support Guideline 1, Commentary Gross versus Net Income.

34. Father requested the Court take into account the excess tax he paid in 2007 and to create a reduction factor of 11.08% of his gross income, when determining his income for child support purposes. See Exhibit 19.

35. Mother submitted evidence to the Court taking into account Father's excess tax paid in 2007 to create a reduction factor. See Exhibit 1 and Exhibit 59(a).

36. Father owes $51,267.13 for the additional support based on the irregular income.

37. In 2007, Mother received social security benefits in regards to her disability for herself and for the benefit of all three minor children.

38. On or about August 2007, Mother filed with the Social Security administration to change the nature of the benefits her children received, from disability benefits

4

derived from her, to survivorship benefits derived from her husband.

39. Father has requested the benefits Mother receives for both herself and her children be included in Mother's gross income for the purposes of calculating child support.

40. Mother has requested the benefits Mother receives on behalf of her children be excluded from her gross income for the purposes of calculating child support.

41. Both parties submitted briefs on the issue of whether or not the survivorship benefits should be included in Mother's gross income.

42. The Court finds that the survivorship benefits should be included in Mother's gross income as of October 2007 and Mother's weekly gross income as of October 5, 2007 was $740.00 a week.

43. The Court finds that from March 20, 2007 (the date Mother filed her Petition to Modify) until October 3, 2007 Father's child support obligation should have been $574.00 a week.

44. The Court finds after Mother started receiving increased benefits on October 5, 2007, that Father's Child Support Obligation should have been $525.50 a week.

45. The Court finds that after Father became the primary physical custodian of [the oldest child] on or about November 2, 2007, that Father's support obligation should have been $419.00 a week.

46. Father's total support obligation from the date Mother filed her Petition to Modify, March 20, 2007 until December 31, 2007 was $22,477.50 (or $387.00 for 28 weeks, $525.50 for 9 weeks, and $419.00 for 4 weeks). See Exhibit 20.

47. From March 20, 2007 until December 31, 2007 Father paid Mother $15,255.00, therefore Father has an arrearage of $7,222.50 of support for 2007.

* * * * *

63. Father overpaid Mother $5,688.80 in 2008. See Exhibit 22.

* * * * *

73. Father overpaid Mother $6,090.24 in 2009.

* * * * *

83. Father overpaid Mother $6,090.24 in 2010.

* * * * *

92. At the time of the May 2, 2011 hearing Father had overpaid Mother $1,756.80 in 2011 for support.

93. From 2007 until the time of the May 2, 2011 hearing Father owes Mother $38,863.55.

* * * * *

102. Mother has requested Father contribute to all of the children's post secondary educational expenses.

* * * * *

106. The Court finds that after scholarships, grants and aid, each child shall be responsible for 10% of the cost of any post secondary educational expenses (including tuition, reasonable fees related to tuition, books, room and board) and thereafter parties shall split the same with Father paying 75% and Mother paying 25% thereafter.

* * * * *

6

111. Mother has requested Father be responsible for her attorney fees incurred in this matter.

112. Mother's former attorney, Bob Wood, submitted an invoice to the Court for attorney fees in the amount of $16,930.00. See Exhibit 16.

113. Some of these fees were in regards to discovery requests and Mother's request for reimbursement for medical expenses (including preparation for the exhibits on the same). See Exhibit 16.

114. Many of the exhibits in regards to medical expenses Mother submitted were patently incorrect although purporting to be for a single year included expenses for several years.

115. Mother testified and Father agreed, that prior to Mother submitting her Petition to the Court for reimbursement of medical expenses, she had never informally requested Father reimburse her for the same.

116. Father served discovery requests on Mother on or about July 7, 2008 in order to prepare for this matter.

117. Mother failed to respond to the same and Father was forced to file a motion to compel on October 28, 2008 which the Court granted and compelled Mother to respond to the same on or before November 1, 2008.

118. Mother failed to comply with the Court's order and did not serve her responses to Father' discovery requests until after that date.

119. Mother's actions in failing to cooperate in discovery, failing to address her request for reimbursement of medical expenses to Father in an informal matter prior to submitting the same to formal litigation, and requesting Father reimburse her for various expenses with no basis have caused Father a great deal of unnecessary attorney fees. See Exhibit 66.

120. Each party shall be responsible for their own attorney fees incurred in this matter.

121. Father shall pay the $38,863.55 no later than July 15, 2011. That amount shall be paid to Mother's attorney to be placed in Ms. Szczerbik's Trust Account and be distributed to pay Mother's attorney fees to Mr. Wood's and Ms. Szczerbik's attorney fees [sic]; then the balance shall be released to Mother.

Appellant's App. p. 18-22.

Both Father and Mother filed motions to correct error, which the trial court denied. Father now appeals, and Mother cross-appeals.

**Analysis**

The main focus of this appeal is the trial court's calculation of child support. "A trial court's calculation of child support is presumptively valid." Young v. Young, 891 N.E.2d 1045, 1047 (Ind. 2008). A trial court's decision regarding child support will be upheld unless the trial court has abused its discretion. Sexton v. Sedlak, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), trans. denied. A trial court abuses its discretion when its decision is clearly against the logic and the effect of the facts and circumstances before the court or if the court has misinterpreted the law. Id. Additionally, our standard of review is governed by the trial court's decision in this case to enter findings of fact and conclusions of law. Id. In such instances, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Id. (quoting Ind. Trial Rule 52(A)). It appears that the trial court issued the findings and conclusions sua sponte, and where the trial court enters such findings and conclusions sua sponte, the specific findings control

8

only as to the issues they cover. Id. A general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial. Id.

## I. Father's 2007 Child Support

We first address Father's arguments regarding his 2007 child support obligation. Father argues that the trial court erred in calculating the child support he owed on his 2007 bonuses, that the trial court erred by failing to adjust his effective tax rate, and that the trial court erred by making inconsistent findings.

Father first argues that the trial court erred when it calculated child support he owed in 2007 due to his bonuses. In March 2007, Mother filed a petition to modify child support, and in October 2007, the parties entered into an Agreed Entry that provided Father would pay child support to Mother in the amount of $387.00 per week commencing on March 20, 2007. The parties noted that Father was "having an exceptional year in 2007 income wise as he [had] earned in excess of $292,000.00 year-to-date and his projected yearly income for 2007 [was] in excess of $314,000.00." Appellant's App. p. 23. For child support purposes, the parties "agreed to use $100,000.00 for [Father's] annual income," "compute what [Mother was] entitled to for 2007 from [Father's] irregular income consisting of bonuses and commissions," and "determine what percentage [Mother was] entitled to therein for 2007 and thereafter." Id. at 24. The parties also agreed that they would "report back to the Court by way of agreement or request a further hearing to determine what [Mother] is entitled to in regard to [Father's] excess income . . . ." Id. at 25. The parties were unable to reach an

9

agreement as to the child support Mother was entitled to receive as a result of Father's income in excess of $100,000.

The Indiana Child Support Guidelines address irregular income from bonuses and provide:

> When the court determines that it is appropriate to include irregular income, an equitable method of treating such income may be to require the obligor to pay a fixed percentage of overtime, bonuses, etc., in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, quarterly) rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation.
>
> One method of treating irregular income is to determine the ratio of the basic child support obligation (line 4 of the worksheet) to the combined weekly adjusted income (line 3 of the worksheet) and apply this ratio to the irregular income during a fixed period. For example, if the basic obligation was $110.00 and the combined income was $650.00, the ratio would be .169 ($110.00 / $650.00). The order of the court would then require the obligor to make a lump sum payment of .169 of the obligor's irregular income received during the fixed period.
>
> The use of this ratio will not result in an exact calculation of support paid on a weekly basis. It will result in an overstatement of the additional support due, and particularly so when average irregular income exceeds $250.00 per week or exceeds 75% of the regular adjusted Weekly Gross Income. In these latter cases the obligor may seek to have the irregular income calculation redetermined by the court.

Ind. Child Support Guideline 3(A), cmt. 2(b).[1]

---

[1] Although we are addressing Father's 2007 child support obligation, neither party argues that we should apply the Indiana Child Support Guidelines or Commentary applicable during 2007. The Guidelines and

The trial court heard evidence that Father's 2007 income was $318,157.93. Thus, Father's excess income over that for which child support was calculated was $218,157.93. In Exhibit 59(a), Mother alleged that Father owed $51,267.13 in child support for 2007. Mother reached this result by multiplying $218,157.93 by 0.235, which is the ratio of the basic child support obligation to the combined weekly adjusted income from October 2007. See Exhibit 1 & Exhibit 59(a). This calculation did not take into account the fact that the parties' oldest child resided with Father beginning in November 2007 or the fact that Mother's income changed in October 2007. Mother's calculation in Exhibit 59(a) also did not take into account Father's proposed adjusted effective tax rate. Relying on Mother's calculations in Exhibit 59(a), the trial court concluded that "Father owes $51,267.13 for the additional support based on the irregular income." Appellant's App. p. 18.

Despite this finding, the trial court also found:

43. The Court finds that from March 20, 2007 (the date Mother filed her Petition to Modify) until October 3, 2007 Father's child support obligation should have been $574.00 a week.

44. The Court finds after Mother started receiving increased benefits on October 5, 2007, that Father's Child Support Obligation should have been $525.50 a week.

45. The Court finds that after Father became the primary physical custodian of [the oldest child] on or about

Commentary underwent significant changes effective January 1, 2010. Both Mother and Father refer only to the revised Guidelines and Commentary.

11

November 2, 2007, that Father's support obligation should have been $419.00 a week.

46. Father's total support obligation from the date Mother filed her Petition to Modify, March 20, 2007 until December 31, 2007 was $22,477.50 (or $387.00 for 28 weeks, $525.50 for 9 weeks, and $419.00 for 4 weeks). See Exhibit 20.

47. From March 20, 2007 until December 31, 2007 Father paid Mother $15,255.00, therefore Father has an arrearage of $7,222.50 of support for 2007.

Id. at 19. This calculation is based on Father's Exhibit 20. Father did not rely on a percentage of his excess income in making this calculation. Instead, Father used his final annual income adjusted by an increased effective tax rate to calculate the weekly child support.

The trial court made conflicting findings on the child support owed by Father for 2007. The trial court found both that Father owed $51,267.13 and also that he owed $7,222.50. As a result, we reverse and remand for the trial court to recalculate Father's 2007 child support obligation. In doing so, we note that the parties agreed in their March 2007 Agreed Entry to use a percentage to calculate Father's child support owed, and the Commentary to Indiana Child Support Guideline 3 suggests this as one possible method of calculating such support. See Appellant's App. p. 24 ("The parties will determine what percentage [Mother] is entitled to therein for 2007 and thereafter."); see also Child Supp. G. 3(A), cmt. 2(b). The parties were simply unable to reach an agreement as to the percentage amount. As the Commentary notes, the percentage calculation described in the Commentary may result in an overstated child support obligation, and the "obligor

12

may seek to have the irregular income calculation redetermined by the Court." Child Supp. G. 3(A), cmt. 2(b). Given the parties' Agreed Entry and the Commentary, it would have been proper to calculate Father's additional 2007 child support by using a percentage amount, and the percentage amount used by the trial court on remand is within the trial court's discretion.

Father also argues that the trial court should have adjusted his tax rate because he paid more in taxes in 2007 than the assumed rate found in the Child Support Guidelines. The Commentary to Indiana Child Support Guideline 1 provides:

> One of the policy decisions made by the Judicial Administration Committee in the early stages of developing the Guidelines was to use a gross income approach as opposed to a net income approach. Under a net income approach, extensive discovery is often required to determine the validity of deductions claimed in arriving at net income. It is believed that the use of gross income reduces discovery. (See Commentary to Guideline 3A). While the use of gross income has proven controversial, this approach is used by the majority of jurisdictions and, after a thorough review, is considered the best reasoned.
>
> The basic support obligation would be the same whether gross income is reduced by adjustments built into the Guidelines or whether taxes are taken out and a net income option is used. A support guideline schedule consists of a column of income figures and a column of support amounts. In a gross income methodology, the tax factor is reflected in the support amount column, while in a net income guideline, the tax factor is applied to the income column. In devising the Indiana Guidelines, an average tax factor of 21.88 percent was used to adjust the support column.
>
> Of course, taxes vary for different individuals. This is the case whether a gross or net income approach is used. Under the Indiana Guideline, where taxes vary significantly from the assumed rate of 21.88 percent, a trial court may choose to deviate from the guideline amount where the variance is substantiated by evidence at the support hearing.

13

Here, Father argued that his effective tax rate was 32.96% for 2007. The trial court found:

33. The Child Support Guidelines use a tax rate of 21.88% and provide that a court may deviate from guideline amounts when evidence is substantiated at the support hearing. See Indiana Child Support Guideline 1, Commentary Gross versus Net Income.

34. Father requested the Court take into account the excess tax he paid in 2007 and to create a reduction factor of 11.08% of his gross income, when determining his income for child support purposes. See Exhibit 19.

35. Mother submitted evidence to the Court taking into account Father's excess tax paid in 2007 to create a reduction factor. See Exhibit 1 and Exhibit 59(a).

Appellant's App. p. 18. However, the trial court never specifically found that it would apply the adjusted tax rate and, in fact, appears to have used Exhibit 59(a), which did not take the excess tax into account. It is unclear whether the trial court intended to use Father's proposed adjusted tax rate, and the trial court should clarify that issue on remand.

## II. Social Security Survivor Benefits

We next address Mother's cross-appeal argument that the trial court erred by using the survivor benefits received by the children in calculating Mother's weekly gross income. Beginning in late 2007, Mother and the two youngest children received survivor benefits in the amount of $1,210.00 per month for Mother and $1,014.00 per month for each of the two youngest children as a result of the death of Mother's husband. The trial court here found: "The Court finds that the survivorship benefits should be included in

14

Mother's gross income as of October 2007 and Mother's weekly gross income as of October 5, 2007 was $740.00 a week." Appellant's App. p. 19. On appeal, Mother argues that the trial court erred by including the $1,014 per month received by each of the two children in her weekly gross income.[2]

The Indiana Child Support Guideline regarding calculation of a parent's weekly gross income provides:

> For purposes of these Guidelines, "weekly gross income" is defined as actual Weekly Gross Income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon "in-kind" benefits. Weekly Gross Income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, inheritance, prizes, and alimony or maintenance received from other marriages. Social Security disability benefits paid for the benefit of the child must be included in the disabled parent's gross income. The disabled parent is entitled to a credit for the amount of Social Security disability benefits paid for the benefit of the child. Specifically excluded are benefits from means-tested public assistance programs, including, but not limited to, Temporary Aid To Needy Families (TANF), Supplemental Security Income, and Food Stamps. <u>Also excluded are survivor benefits received by or for other children residing in either parent's home.</u>

Child Supp. G. 3(A)(1) (emphasis added). The Commentary to Guideline 3(A) provides:

> In calculating Weekly Gross Income, it is helpful to begin with total income from all sources. This figure may not be the same as gross income for tax purposes. Internal Revenue

---

[2] The inclusion of survivor benefits received by Mother in her weekly gross income is not at issue here.

Code of 1986, § 61. Means-tested public assistance programs (those based on income) are excluded from the computation of Weekly Gross Income, but other government payments, such as Social Security benefits and veterans pensions, should be included. However, <u>survivor benefits paid to or for the benefit of their children are not included</u>. In cases where a custodial parent is receiving, as a representative payee for a prior born child, Social Security survivor benefits because of the death of the prior born child's parent, the court should carefully consider Line 1 C of the basic child support obligation worksheet, Legal Duty of Support for Prior-born Children. Because the deceased parent's contribution for the support of the prior born child is being partially paid by Social Security survivor benefits that are excluded from Weekly Gross Income, the court should not enter, on Line 1C, an amount that represents 100% of the cost of support for the prior born child. The income of the spouses of the parties is not included in Weekly Gross Income.

Child Supp. G. 3(A), cmt. 2 (emphasis added).

The Child Support Guidelines and Commentary do not address the exact situation here—whether survivor benefits paid to children due to the death of a custodial parent's subsequent spouse are/or should be included in the custodial parent's weekly gross income—and no Indiana cases address this situation. Father argues that the Guideline conflicts with the Commentary, i.e., the Guideline excludes "survivor benefits received by or for <u>other</u> children residing in either parent's home" but the Commentary excludes "survivor benefits paid to or for the benefit of their children," and that we should include the survivor benefits in Mother's weekly gross income. Child Supp. G. 3(A) & cmt. 2 (emphasis added).

We acknowledge that the Guideline and the Commentary contain different language. Despite the differing language in the Guideline and Commentary, we conclude

16

that the language of the Child Support Guidelines and Commentary indicate that survivor benefits received by or for children are not includable in a parent's weekly gross income. Further, we note that the Guidelines and Commentary specifically exclude income from a parent's spouse in the calculation of a parent's weekly gross income.[3] See Child Supp. G. 3(A), cmt. 2. The purpose of the children's survivor benefits here is to replace income lost by the death of Mother's husband. Inclusion of the children's survivor benefits in Mother's weekly gross income would result in a windfall to Father. As a result, we conclude that the trial court erred when it included the survivor benefits received by the children due to their stepfather's death in the calculation of Mother's weekly gross income. This determination will necessitate a recalculation of the child support obligations for 2007 through the present time.

Although we conclude that survivor benefits received by the children should not be included in Mother's weekly gross income, Mother concedes that, if the children had continued receiving disability benefits due to Mother's disability, those funds would have been includable in Mother's weekly gross income. The Commentary to Guideline 3(G) provides: "Social Security benefits paid to a parent for the benefit of a minor child are included in the disabled parent's Gross Weekly Income for purposes of determining child support regardless of which parent actually receives the payment." The record indicates that the two youngest children each received $200 per month based on Mother's disability prior to the death of Mother's husband. Mother requests that, on remand, the

---

[3] We acknowledge, however, that under the Commentary to Child Support Guideline 3(A), income may be imputed "to a parent whose living expenses have been substantially reduced due to financial resources other than the parent's own earning capabilities . . . ."

17

trial court "exclude the survivor benefits from her income and include only the disability benefits the children would have received had they not received the survivor benefits." Appellee's Br. p. 12. We agree that this income should be imputed to Mother and direct the trial court to do so on remand.

Finally, in calculating post-secondary education expenses, the trial court ordered "that after scholarships, grants and aid, each child shall be responsible for 10% of the cost of any post secondary educational expenses (including tuition, reasonable fees related to tuition, books, room and board) and thereafter parties shall split the same with Father paying 75% and Mother paying 25% thereafter." Appellant's App. p. 21. "If the trial court determines that an order for college expenses is appropriate, the parents' contributions shall be roughly proportional to their respective incomes." Borum v. Owens, 852 N.E.2d 966, 969 (Ind. Ct. App. 2006). Mother argues that the 75/25 split is roughly proportional to Father and Mother's income if the children's survivor benefits are included in Mother's income. We direct the trial court to recalculate the appropriate ratio of post-secondary education expenses to be paid by Mother and Father given our determination that the children's survivor benefits should not be included in Mother's weekly gross income.

### III. Attorney Fees

Next, Mother argues that the trial court abused its discretion when it failed to order Father to pay her attorney fees in this matter. Indiana Code Section 31-16-11-1, the statute regarding attorney fees in child support matters, is discretionary. Whited v. Whited, 859 N.E.2d 657, 665 (Ind. 2007). A determination regarding attorney fees in

18

proceedings to modify a child support award is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion. Id. In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. Id. The trial court may also consider any misconduct on the part of either of the parties that creates additional legal expenses not otherwise anticipated. Redd v. Redd, 901 N.E.2d 545, 554 (Ind. Ct. App. 2009).

The trial court here ordered the parties to pay their own attorney fees. Mother argues that the trial court abused its discretion because her income is substantially less than Father's income. However, in denying Mother's request for attorney fees, the trial court cited Mother's "actions in failing to cooperate in discovery, failing to address her request for reimbursement of medical expenses to Father in an informal matter prior to submitting the same to formal litigation, and requesting Father reimburse her for various expenses with no basis." Appellant's App. p. 22. Mother argues that she was not required to seek an informal resolution, but she does not dispute that she failed to cooperate in discovery and requested improper reimbursements. She also argues that her conduct did not warrant an entire rejection of her request for attorney fees. However, this determination was within the trial court's discretion, and we cannot say that the trial court abused its discretion here.

### IV. *Payment to Attorneys*

19

Finally, Mother argues that the trial court erred by ordering the child support judgment in her favor to be paid first to her attorneys, Wood and Szczerbik.[4] The trial court concluded:

> Father shall pay the $38,863.55 no later than July 15, 2011. That amount shall be paid to Mother's attorney to be placed in Ms. Szczerbik's Trust Account and be distributed to pay Mother's attorney fees to Mr. Wood's and Ms. Szczerbik's attorney fees [sic]; then the balance shall be released to Mother.

Appellant's App. p. 22.

On appeal, Mother argues that neither Wood nor Szczerbik filed an attorney lien under Indiana Code Section 33-43-4-2 and that the trial court did not have authority to order the payment of attorney fees out of the judgment.[5] Neither party has cited any authority, nor have we found any authority, that would permit the payment of Mother's attorney fees directly out of her child support judgment in the absence of a lien. On remand, Mother's attorneys should provide clear authority to the trial court, if any exists, to support the withholding of their attorney fees from Mother's child support judgment.[6]

---

[4] In her Reply Brief, Mother argues that she never had the chance to question the reasonableness of her attorneys fees. Mother did not raise this issue in her Appellee's Cross-appeal Brief and has waived the issue. See Kelly v. Levandoski, 825 N.E.2d 850, 858 (Ind. Ct. App. 2005) (noting that appellants are not allowed to present new arguments in reply briefs and that any argument not raised in the initial brief is waived), trans. denied.

[5] Father cites Reeder v. Reeder, 917 N.E.2d 1231 (Ind. Ct. App. 2009), for the proposition that such an order is appropriate. Although the trial court in Reeder issued a similar order in dissolution proceedings, the payment of attorney fees out of a child support award was not an issue on appeal, and we do not find Reeder persuasive here.

[6] Indiana Code Section 31-16-11-1(b) provides: "The court may order the amount to be paid directly to the attorney, who may enforce the order in the attorney's name." However, Mother asked that Father be ordered to pay her attorney fees under this statute, and the trial court denied her request. Consequently, this statute is inapplicable here.

**Conclusion**

The trial court erred by making conflicting findings regarding Father's 2007 child support and by including survivor benefits received by the children in the calculation of Mother's weekly gross income. However, we affirm the trial court's denial of Mother's request for attorney fees. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and BROWN, J., concur.