# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2016, 9:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael H. Michmerhuizen
Barrett McNagny, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

James C. Yankosky
Angelica N. Fuelling
Tourkow Crell Rosenblatt &
Johnston, LLP
Fort Wayne, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas H. Torson, <br> *Appellant-Respondent,* <br><br> v. <br><br> Vicky L. Torson, <br> *Appellee-Petitioner.* | December 20, 2016 <br><br> Court of Appeals Case No. 90A05-1602-DR-362 <br><br> Appeal from the Wells Superior Court <br><br> The Honorable Kenton W. Kiracofe, Judge <br><br> Trial Court Cause No. 90D01-1002-DR-16 |

**Barnes, Judge.**

# Summary

Thomas Torson appeals the trial court's order modifying the parties' parenting time and the child support order in favor of Vicky Torson. We affirm in part and remand consistent with this decision.

# Issues

Thomas raises four issues for our review, which we consolidate and restate as:

    I.      whether the trial court abused its discretion when it included the acquisition of certain stock in his income for purposes of calculating child support and modifying Thomas's child support payments; and

    II.     whether the trial court abused its discretion when it modified the parties' parenting time.

# Facts

Thomas and Vicky were married in 1992, and they had three sons. In February 2010, Vicky filed her petition for dissolution of marriage. In April 2010, the parties filed their marital settlement agreement, and the trial court approved it. The parties' sons were thirteen, eleven, and eight years old at the time the settlement agreement was approved. The parties agreed to share joint legal and physical custody of their three children, one of whom has since turned eighteen. Since then, this matter has remained contentious, and the parties have been litigious. They have filed numerous contempt citations, petitions for rule to show cause, and requests for modifications. Between April 2010 and October 2010, the parties filed four mediated settlement agreements. In May 2012, the parties filed a fifth mediated agreement in which they agreed Thomas would

have sole legal custody of the children; they continued to share physical custody. Thereafter, the parties continued to litigate issues related to custody, child support, and parenting time.

[3] On June 11, 2015, Thomas filed a petition for modification of parenting time schedule and related orders. At the time Thomas filed his petition, Thomas exercised parenting time eight out of fourteen overnights, and Vicky exercised parenting time six out of fourteen overnights. On July 22, 2015, Vicky filed a verified petition to modify child support and post-secondary educational expenses. At the time Vicky filed her petition, the parties' eldest child was responsible for one-third of his college expenses. Of the remaining two-thirds of the college expenses, Thomas was responsible for paying sixty percent, and Vicky was responsible for paying forty percent. In August 2015, at Thomas's request, the trial court appointed a guardian ad litem.

[4] After hearings on the parties' motions, the trial court sua sponte entered findings of fact and conclusions thereon on January 25, 2016. The trial court modified the parties' parenting time by ordering Thomas and Vicky to have seven out of fourteen overnights with the minor children. The trial court modified Thomas's weekly child support obligation and ordered him to pay 71% of the portion of college expenses for which the parties are responsible and ordered Vicky to pay 29% of those college expenses. Thomas now appeals.

# Analysis

## *I. Child Support*

"'A trial court's calculation of child support is presumptively valid.'" *Martinez v. Deeter*, 968 N.E.2d 799, 805 (Ind. Ct. App. 2012) (quoting *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008)). "A trial court's decision regarding child support will be upheld unless the trial court has abused its discretion." *Martinez*, 968 N.E.2d at 805. "A trial court abuses its discretion when its decision is clearly against the logic and the effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Id.* Where, as here, the trial court enters findings of fact and conclusions thereon sua sponte, the specific findings control only with regard to the issues they cover. *Id.* The trial court's findings or judgment will be set aside only if they are clearly erroneous. *In re Marriage of Sutton*, 16 N.E.3d 481, 485 (Ind. Ct. App. 2014). A finding is clearly erroneous only if there are no facts or inferences drawn therefrom to support it. *Id.* "A general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial." *Martinez*, 968 N.E.2d at 805.

Indiana trial judges are granted latitude and deference in family law matters. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). "On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id.* (citation omitted). "Appellate judges are not to reweigh the

evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Id.* (citation omitted).

> (a) Provisions of an order with respect to child support or an order for maintenance . . . may be modified or revoked . . . .

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

> (2) upon a showing that:

> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting the modification was filed.

Ind. Code § 31-16-8-1.

### A. Calculation of Thomas's Income

[7] Thomas first challenges the trial court's inclusion in its calculation of his income certain stock his employer, United Parcel Service, Inc. ("UPS"), gives him. He contends he receives the stock "in lieu of a traditional pension." Appellant's Br. p. 24.

[8] The trial court found that, based on their 2014 W-2s, Vicky earned $929.33 per week and Thomas earned $2,302.91 per week. The trial court then ordered

Thomas to pay $177.37 per week in child support.  Thomas testified his annual salary is "about $100,000.00" and that he also receives, "MIP."  Tr. p. 37.  Thomas explained:

> What that is is UPS doesn't have a pension and our pension is stock and they call them RSUs and RSU stands for 'restricted stock units' and what it is given, I'll give a ball park, I'm given about [$]20-25,000 a year of stock and that's my retirement and they are in RSU form and that means out of say $25,000.00 in stock, it's spread out over 5 years so they only give me so much per year . . . .

*Id*.  In an attempt to "get a better picture of what [Thomas's] income actually is," the trial court questioned him further regarding the UPS stock.  *Id.* at 303.  Thomas testified, "Yeah" when the trial court asked, "once you receive the stock, can you sell it, trade it, do anything with it?"  *Id.* at 302.  But Thomas characterized the stock as his retirement; "It's a pension."  *Id.*  Thomas acknowledged the stock payments are reflected on his W-2 and also stated, "since they did away with our pension they do a 3% match on 401(K) and we get stock and that's what our retirement is going to be is our stock and that whatever."  *Id.*  Thomas testified he believed his income is reflected on his pay stub, not what is reflected on his W-2.

[9]  Thomas correctly argues there is evidence—Thomas's testimony—that the UPS stock at issue is a retirement benefit, not income.  But there is also evidence that the stock is, in fact, income.  Most notably, Thomas's 2014 W-2 includes the value of the stock in the box designated to reflect "Wages, tips, other comp."

Ex. F.  Because there clearly are facts that support the trial court's finding regarding Thomas's income, that finding is not clearly erroneous.[1]  Although Thomas presented evidence favorable to his position that the UPS stock was not income but a retirement benefit, our standard of review does not permit us to reweigh the evidence.  *Mitchell v. Mitchell*, 875 N.E.2d 320, 322-23 (Ind. Ct. App. 2008), *trans. denied*.

### B.  Post-Secondary Educational Expenses

[10]  Thomas contends the trial court erred by modifying the portions of post-secondary educational expenses for which each party is responsible.  The trial court found:

> 3.1  On March 31, 2014, the court entered an order regarding post-secondary educational expenses, including expenses related to dual credit classes while in high school.

> 3.2  In summary, the parties were to share equally the costs of the dual credit classes; the child was responsible for one-third of the college expenses and the parties were to divide the remaining two-thirds.  Father would be responsible for the [sic] 60% [of] the parties' two-third portion and Mother the remaining 40%.

---

[1] Thomas directs us to *Saalfrank v. Saalfrank* to support his argument.  899 N.E.2d 671 (Ind. 2008).  In *Saalfrank*, this court concluded, "in determining whether to exclude retirement contributions, in whole or in part, for purposes of calculating a child support obligation, the trial court should consider: [seven factors]."  *Id.* at 680.  There is a key distinction between *Saalfrank* and this case:  in *Saalfrank*, the parties did not dispute that the money in question was a retirement benefit.  In this case, however, the very issue is whether the UPS stock should be characterized as income or a retirement benefit.  Because in this case the trial court found Thomas's UPS stock was income, not a retirement benefit, *Saalfrank* is inapplicable.

* * * * *

3.5 Based upon the parties' respective incomes, the Court finds that the child is responsible for one-third of the college expenses and the parties shall divided [sic] the remaining two-thirds, with Father being responsible for 71% and Mother being responsible for 29%.

App. p. 26.

[11] Thomas contends the trial court did not explain why it ordered the modified division of college expenses and that "[t]here was no evidence presented demonstrating a change in circumstances 'so substantial and continuing as to make the terms unreasonable' that would permit a modification under Indiana Code § 31-16-8-1(b)(1)." Appellant's Br. p. 43 (no citation in original). We review a trial court's decision to order the payment of post-secondary educational expenses for an abuse of discretion. *Hirsch v. Oliver*, 970 N.E.2d 651, 662 (Ind. 2012). Because the trial court did not make a finding regarding its reason for modifying the parties' division of post-secondary educational expenses, we may affirm the trial court's order in this regard "on any theory supported by the evidence adduced at trial." *Martinez*, 968 N.E.2d at 805.

[12] We conclude the evidence of the parties' incomes—Thomas's 2013 and 2014 W-2s and Vicky's 2013 and 2014 federal tax returns—amply support the trial court's order regarding the division of post-secondary educational expenses. Between 2013 and 2014, Thomas's W-2s reflect his wages increased by

$14,233.[2]  *See* Ex. E.  Vicky's total income, however, increased by a more modest $3,222.  *See* Ex. B and C.  Further, Thomas's 2014 wages equal approximately seventy-one percent of the parties' combined incomes, the same percentage of the post-secondary educational expenses that the trial court ordered Thomas to pay.  Thomas's increased income is a "changed circumstance so substantial and continuing as to make the terms [of the child support order] unreasonable."  I.C. § 31-16-8-1; *see Apter v. Ross*, 781 N.E.2d 744 (Ind. Ct. App. 2003) (concluding father's increased income constituted a substantial change in circumstances warranting a modification of child support).  The trial court did not abuse its discretion by modifying this portion of the child support order.

### C. Parenting Time Credit

[13]  Thomas next contends that the trial court abused its discretion by retroactively modifying the child support order to the date Vicky filed her petition.  He does not expand on that assertion, however.  Instead, the bulk of his argument focuses on the fact that the trial court's order modifying child support gave him credit for only 180 overnights when, in fact, Thomas exercised eight out of fourteen consecutive nights of parenting time—"57.143% of the parenting time"—between the date Vicky filed her petition and the date the modification went into effect.  Appellant's Br. pp. 27-28.  To the extent Thomas argues the

---

[2] Thomas again contends the trial court erred by including the UPS stock in its income calculation.  We do not revisit that argument.

trial court erroneously modified its child support order retroactively, we conclude he has waived it for failure to make a cogent argument as required by Indiana Appellate Rule 46(A)(8)(a).

[14] With regard to the credit for overnight parenting time, Thomas correctly notes that during the six months that passed between the date the retroactive order took effect and the date the modified parenting time schedule took effect, he exercised parenting time for eight out of fourteen consecutive nights rather than seven out of fourteen nights. The difference between the child support calculation with Thomas's scheduled parenting time and that with which the trial court credited him is minimal. Vicky calculates the difference is $68.85.

[15] Thomas faults Vicky for not setting out the manner in which she calculated that figure and asks this Court to remand this matter to the trial court for a new calculation of his parenting time credit. However, Thomas does not expressly argue Vicky's calculation is inaccurate, nor does he provide us with an alternate calculation. We thus conclude that Thomas has failed to make a cogent argument that Vicky's calculation is incorrect or that he is owed a credit in a different amount, and we accept Vicky's calculation. Even if Vicky's calculation is incorrect, the credit is de minimus.

[16] We see no wisdom in asking the parties and trial court to expend additional time and financial resources continuing to litigate this issue on remand for a mere $68.85. Accordingly, we direct the trial court to modify its order to reflect a $68.85 credit to Thomas.

## II. Modification of Parenting Time

Thomas next argues that the trial court erred by rejecting his proposed modification of parenting time and instead modifying the parties' parenting time in favor of Vicky.

The trial court issued detailed findings of fact related to Thomas's request for a modification of parenting time. It found:

> 1.8 In his Petition to Modify, Father states the chronic areas of dispute include the children's school work, school projects, grades, sports activities, sports practices and conditioning schedules, as well as telephone and personal contact with the boys and lost sports equipment.

> 1.9 In its July 17, 2015 Order, the Court addressed the issues of telephone and personal contact as well as lost sports equipment. The Court now reiterates that the boys are really young men and are ultimately responsible for their own sports equipment. Further, each child has their own cell phone and can contact the other "off-duty" parent whenever they desire.

> * * * * *

> 1.11 The Court finds that the current custody and parenting time schedule clearly is not working due in large part to what it observes as Father's relentless controlling and competitive personality. Ordinarily, the Court would modify the parenting time schedule to a more traditional parenting time arrangement; however, the children's extracurricular activities are numerous and lengthy. The Court has concerns that Father would use any change in the children's performance at school to blame Mother, thus prompting further litigation.

1.12 To say that Father is extremely active in his children's curricular and extracurricular activities is an understatement. Evidence presented shows that Father is in regular communication, if not almost daily in some circumstances, with the children's teachers, guidance counselors and coaches.

1.13 On some occasions, Father emails teachers moments after the grades for various assignments, quizzes and tests are reported on an online database.

1.14 Dr. Amanda Mayle testified that in her opinion Father would be a better physical custodian than Mother. The Court finds, however, that Dr. Mayle provides regular counseling for Father and the children. Other than the initial assessment of Mother, Dr. Mayle has not provided any counseling to Mother or consulted with Mother regarding any of the alleged failures of Mother as a parent.

1.15 Father claims the children's grades suffer when in Mother's care; however, the children are currently on the honor roll and maintain grades of A's and B's.

1.16 Father cites two instances where the current parenting time arrangement interfered with the children's extracurricular activities.

* * * * *

1.16.3 These two incidents are so inconsequential and trivial it is unbelievable that two days were spent arguing over incidents like them.

1.17 Father further points to a situation when the child was an hour and half late for a practice. Mother testified that she

mistakenly thought the practice was in Marion, Indiana where it has been at times. Instead the practice was in Wabash, Indiana. The Court notes that Father helps coach this team and could have provided transportation to the practice. He does, however, provide transportation to other players on the team.

1.18 Since the parties['] divorce was granted in 2010, the children have had regular, frequent, and continuing contact with each parent.

1.19 Father has maintained now, as he has previously, that Mother's parenting time should be limited because the children's school performance is worse when in her care. Father hasn't presented any evidence of this. To the contrary, the children are honor roll students. Further, Father does not present any evidence that Mother fails to have the children do homework or study for tests.

1.20 Father maintains that the above facts warrant a modification of parenting time. He desires and believes it will be in the children's best interest that Mother's parenting time be limited to a more traditional parenting time arrangement. For example, overnight parenting time every other weekend and one evening during the week.

* * * * *

1.23 As noted above, Mother and Father have joint physical custody, and share near equally parenting time. In a 14 day period, Father has the children 8 consecutive days and Mother has the children the remaining 6 consecutive days.

1.24 Father's request would reduce Mother's overnights in a two-week period to two consecutive days.

1.25 The Court finds that Father's request is merely an end run around the statutory requirement of showing of a substantial change of circumstance for a modification of physical custody. Essentially, Father's request is a de facto modification of custody. Along that line, the Court does not find that there has been a substantial change in any of the statutory requirements required at I.C[.] 31-17-2-8 and DENIES Father's requested change.

1.26 The Court does find, however, that a modification of the current parenting time arrangement would be in the best interest of the children. Currently, the parties have "joint physical custody" which is not defined by law. Based on the testimony and evidence presented, the Court finds that the current parenting time arrangement should be modified to an equal division. Therefore, Mother and Father shall each have parenting time for seven (7) consecutive days beginning Sunday at 6:00 p.m., unless otherwise agreed by the parties.

App. pp. 23-25.

[19] Before addressing the substance of Thomas's argument, we note a repeated inconsistency therein. Although Thomas styled his June 11, 2015, motion as a "Petition for Modification of Parenting Time Schedule and Related Orders," his prayer for relief in that motion requests "an order granting him primary physical custody of the children . . . ." App. p. 226. A request to modify parenting time and a request to modify a child custody order require very different determinations. "The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child." Ind. Code § 31-17-4-2. In order to modify a child custody order, however, the trial court must determine the modification is in the best interest

of the child and "there is a substantial change in one (1) or more of the factors that the court may consider under [Indiana Code Section 31-17-2-8] and, if applicable, section 8.5 of this chapter." I.C. 31-17-2-21.

[20] Thomas's petition for modification did not allege a substantial change in circumstances, nor did he argue in his closing statement to the trial court that any such change had taken place. In both his petition for modification of parenting time and his closing statement he contended his request for increased parenting time was in the children's best interest; however, his petition for modification stated he "believes it to be in the boys' best interest that he be their primary physical custodian." App. p. 226.

[21] On appeal, Thomas frames this issue as one of modifying parenting time, and he seems to take issue with the trial court's characterization of his petition for modification as an "end run" around the substantial change showing necessary to support a change of custody. *Id.* at 25. He seems to argue, primarily, that a modification of parenting time in his favor was in the children's best interests. He also seems to advance an alternative argument that he presented sufficient evidence of substantially changed circumstances to support a modification of custody. He states:

> [E]ven if Thomas's request was simply a request for a *de facto* modification, the Trial Court still had the discretion to modify custody to a degree less than a *de facto* modification . . . if the modification would be in the children's best interests. Moreover, the evidence demonstrates that there was a substantial change

justifying a modification of custody, as opposed to a modification of parenting time.

Appellant's Br. p. 32. This argument is, at best, confusing.

[22] Thomas does not make a cogent argument detailing the substantial changes to the statutory factors required to obtain a custody modification, nor does he provide citations to authority to support his contention regarding a substantial change. Therefore, to the extent Thomas argues the evidence was sufficient to support a modification of physical custody, we conclude he has waived that argument because he has failed to make a cogent argument on appeal. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning [and] must be supported by citations to the authorities . . . relied on"). We thus confine our review to the trial court's decision to increase Vicky's parenting time from six consecutive days to seven.

[23] First, Thomas challenges a portion of finding 1.19, in which the trial court found Thomas has not presented any evidence that the children's school performance is worse when they are in Vicky's care. We note that the next sentence in that finding is: "To the contrary the children are honor roll students." App. p. 24. The trial court also found that the children "maintain grades of A's and B's." *Id.* We acknowledge there is evidence that the children sometimes earn C's, D's, and F's on individual projects and homework assignments. Thomas testified the children earn these lower grades on schoolwork they complete at Vicky's house. The guardian ad litem testified

that he carefully reviewed the children's grades and noticed "an abnormally large number of grades day to day and week to week that are below what you would expect for an A student or a B student." Tr. p. 110. He looked at the dates on which assignments were completed and stated the school records "do lend some support for [Thomas's] proposition." *Id.* at 111. However, the guardian ad litem also testified that, despite some outlying low grades, "we're talking about close to straight A students and a little room for improvement I guess until you get to 4.0 but they certainly strike me as gifted." *Id.* at 110.

[24] We read the trial court's findings more broadly than Thomas seems to. We acknowledge that there may be "some support" for Thomas's theory that the children earn some lower grades on some assignments they complete while in Vicky's care, but, overall, the children are excelling in school. *Id.* at 110. There is no evidence that spending time in Vicky's care has negatively affected their overall academic performance. We thus conclude the evidence supports the trial court's finding in this regard.

[25] Thomas also contends "a review of the entire record should leave this Court with a firm conviction that the Trial Court was mistaken." Appellant's Br. p. 32. We note that the trial court did not make specific findings stating why it believed the modification of parenting time it chose was in the children's best interests. It did, however, find that it would "[o]rdinarily" modify the parenting time schedule to a more traditional arrangement but that it had "concerns that Father would use any change in the children's performance at school or athletics to blame Mother, thus prompting further litigation." App. p. 23.

[26] Thomas directs us to the evidence in the record that is most favorable to his position. In particular, Thomas argues that Dr. Mayle's testimony supports his position. We note that the trial court acknowledged that Dr. Mayle testified it was her opinion that Thomas would be a better physical custodian than Vicky. But the trial court did not give that testimony as much weight as Thomas would have liked because Dr. Mayle regularly counsels Thomas and the children but "has not provided any counseling to Mother or consulted with Mother regarding any of the alleged failures of Mother as a parent." App. p. 23. "[T]he weight to be given expert testimony is for the trier of fact to decide, and it is not bound by an expert's opinion. Moreover, the trial court may even disregard such opinion if it so desires." *Indiana Family & Soc. Serv. Admin. V. Hospitality House of Bedford*, 783 N.E.2d 286, 292 (Ind. Ct. App. 2003). Our standard of review does not permit us to reweigh the evidence. *Mitchell*, 875 N.E.2d at 322-23.

[27] Because the trial court did not make specific findings explaining its modification of parenting time, we review the trial court's judgment under the clearly erroneous standard and will reverse it only if there are no facts or inferences drawn from the evidence that support the judgment. *Sutton*, 16 N.E.3d at 485. In response to the question, "what changes could be made to make things better if they're doing so well for your kids?" Vicky testified:

> You know right now the way we are doing it, it is breaking right in the middle of the week. I mean that's right in the middle of their week, it[']s mid-week. It's kind of, you know, yes, we've been doing it for years but [one child] will still ask when are we

at dad's, when are we at your house on dates. You know, if it could just be more consistent, you know, Sunday to Sunday or whatever, I think that would help a lot.

Tr. p. 228. Vicky also testified that she thinks it is important for the children's well-being that they "spend a similar amount of time with [her] that they have right now" because she thinks it is "very important to spend as much time with both parents as they can. Kids need both of their parents." *Id.* She explained she thinks the children need the "balance" that comes with a near 50/50 split between the parties' parenting time and that she thinks the children "need us both the same and [that] taking large blocks of time away from one or the other, I don't see how that helps." *Id.* at 233-34. These facts support the trial court's conclusion that the modification of parenting time is in the children's best interests. We thus conclude that the trial court's judgment was not clearly erroneous.

# Conclusion

[28] The trial court did not abuse its discretion by including certain stock in its calculation of Thomas's income, nor did it abuse its discretion when it modified the portions of post-secondary educational expenses for which the parties are responsible. The trial court did not abuse its discretion by modifying the parties parenting time. We remand this matter, however, so that the trial court may reconsider Thomas's credit for parenting time exercised between July 22, 2015, and January 25, 2016. We affirm in part and remand for corrections consistent with this decision.

Affirmed in part and remanded.

Bailey, J., and Riley, J., concur.