946 N.E.2d 1177 (2011)
Timothy D. SEXTON, Appellant-Petitioner,
v.
Donna M. (Sexton) SEDLAK, Appellee-Respondent.
No. 49A04-1005-DR-330.
Court of Appeals of Indiana.
March 25, 2011.
*1179 Melanie Reichert, Broyles Kight & Ricafort, PC, Indianapolis, IN, Attorney for Appellant.

OPINION
CRONE, Judge.

Case Summary and Issues
Timothy D. Sexton ("Father") and Donna M. (Sexton) Sedlak ("Mother") were *1180 married and had three children. After their divorce, they initially shared custody. Subsequently, Mother filed a petition to modify custody. The trial court awarded primary physical custody to Mother and ordered Father to pay child support. For more than three years, Father paid child support consistent with the trial court's order. Then the parties began deviating from the order as to physical custody of the children, and Father stopped paying child support. On June 12, 2009, Father filed a petition for emancipation and to modify child support. The trial court denied his petition for emancipation and set his child support obligation at $117. Father appeals, arguing that the trial court erred in failing to order retroactive modification of his child support to a date prior to the filing of his petition to modify; that the trial court erred in denying his petition for emancipation; and that the trial court abused its discretion in determining the amount of his child support obligation. As to the first two issues, we find no error in the trial court's decisions and affirm. As to the amount of Father's child support obligation, we find that the trial court failed to consider that one child was partially supporting herself, and therefore we reverse and remand to determine Father's child support obligation in light of the child's capability to partially support herself.

Facts and Procedural History
Father and Mother were married on August 26, 1989. They had three children: S.S., born February 11, 1988; T.S., born August 24, 1990; and L.S., born December 29, 1992. On January 7, 1998, the parties were divorced. Their divorce decree was based on an agreed settlement, pursuant to which Father and Mother shared joint legal and physical custody of the children and neither party was required to pay child support due to their equivalent incomes and equally shared physical custody of the children.
On October 5, 2000, Mother filed a petition to modify custody, parenting time, and support. Following a hearing on February 5, 2002, the trial court issued an order awarding primary physical custody of the children to Mother, with Father to exercise visitation pursuant to the Indiana Parenting Time Guidelines. At the parties' discretion, Father could extend his weekend visitation until Monday or exercise a mid-week overnight visitation on his off week. The trial court ordered Father to pay child support of $153.85 a week. However, Father's child support was to abate by fifty percent any time he had all three children longer than seven consecutive days. Father paid child support in accordance with the trial court's order until August 24, 2005.
On September 7, 2005, Mother, pro se, filed a verified petition for modification of child support, stating that the 2002 support order was unreasonable due to the following substantial and continual change in circumstances: one child lived with Mother, one child lived with Father, and the oldest child was going to be eighteen years old. Appellant's App. at 45. In her petition, Mother requested that child support be discontinued. Apparently, Mother filed an agreed entry with her petition, although the chronological case summary ("CCS") entry for September 7, 2005, does not reference it.[1]
In a CCS entry dated September 8, 2005, the trial court disapproved the parties' agreed entry, advised them to seek legal counsel because specific reasons were required to deviate from the child support guidelines, and informed them that child support worksheets were required for a *1181 modification of child support. Id. at 10. On October 18, 2005, Father filed a child support worksheet with the trial court. Otherwise, no further action was taken on Mother's September 2005 petition to modify child support.
On August 13, 2006, the parties executed a notarized custody and child support agreement, wherein they agreed that T.S. and L.S. would reside with Father and neither party would pay child support. Id. at 47. This agreement was not filed with the trial court.
In December 2008, Father voluntarily terminated his employment as an auto mechanic with Hometown Transmissions, where he had worked for almost seven years earning $17.50 an hour.
On February 11, 2009, S.S. turned twenty-one and was emancipated by operation of law.
The CCS entry for April 21, 2009, shows that the matter was set for hearing.[2] On June 12, 2009, Father filed a petition for emancipation and to modify child custody and support, in which he apparently requested emancipation of T.S. and modification of custody and child support for L.S.[3] On November 6, 2009, a hearing was held on Father's petition. See Tr. at 4 ("We're here this afternoon on, it was originally dad's Petition to Modify."). The court conducted an in camera interview with L.S. and ordered a custody evaluation by the Domestic Relations Counseling Bureau ("DRCB").[4] The hearing was continued on January 8, 2010, at which time Father voluntarily dismissed his petition for modification of custody of L.S., and the trial court addressed the parties' arguments regarding emancipation of T.S. and child support.
On March 3, 2010, the trial court issued its order on emancipation, abatement, and modification of child support, which provides in relevant part as follows:
5. [T.S.] is nineteen (19) years old and living under the care and control of her Mother. Father failed to show that [T.S.] is capable of supporting herself, and therefore his Petition for Emancipation as to [T.S.] is denied, and child support obligation for [T.S.] will continue.
6. Father is currently unemployed and receiving unemployment benefits in the amount of $382 per week. Father voluntarily terminated his employment in December, 2008. Father's average income for the 2005, 2006, 2007 and 2008 tax years was $658 per week. Given the current state of the economy, the Court imputes income to Father in the amount of $500 per week.
7. Mother currently earns $400 per week through her employment at the Thirsty Turtle tavern.
8. Effective June 12, 2009, Father's child support obligation for T.S. and L.S. *1182 shall be modified to $117 per week. Father's child support obligation shall be paid through the State Central Collections Control Unit and when he becomes employed, by Income Withholding Order. The Court's Child Support Obligation Worksheet is attached hereto as Exhibit A.
9. In accordance with the February 11, 2002 Order of the Court, Father shall receive a 50% abatement in his child support obligation ($153.85 × 50% = $76.93) for the eleven (11) weeks in 2005 in which all three (3) of his children were in his care and custody, or $846.23. This credit shall no longer be in effect as all overnights are factored into child support calculations under the current version of Indiana's Child Support Guidelines.
10. The Court also finds that Father is entitled to credit for the periods in which he had de facto custody of one or two of the parties' children. For a period of approximately 32 weeks, Father had custody of at least one of the parties' children, and for an additional 8 weeks, he had custody of two of the three children. As neither party presented calculations of a proper child support credit for these periods, and as Father did not return to court to seek modification of his obligation during this period, the Court finds that the best interest[s] of the children are served by granting to Father a credit in the amount of 25% of his child support obligation during this period. If he had all 3 of the children, he would have been entitled to a 50% abatement under the February 11, 2002 order. As he had one child most of the time and two for a short period of time, a credit of $38.46 ($153.85 × 25% = $38.46) for each of these 40 weeks, or $1,538.50 is just and reasonable.
11. As the revised child support amount is retroactively effective, Father is entitled to a credit of $36.85 (prior support amount of $153.85  current support amount of $117) for each week from June 12, 2009 to January 8, 2010, a period of 30 weeks, or $1,105.50.
12. Effective January 8, 2010, and before the above-detailed credits, Father is in arrears in his child support obligation in the amount of $31,847.38 ($63,386.20 due less $31,538.82 paid).
13. The total credits to Father are $1,105.50 + $1,538.50 + $846.23 = $3,490.23.
14. Father's net arrearage is therefore $28,357.15.
15. Father shall pay an additional sum of $35 per week toward his child support arrearage until the arrearage is paid in full and his support obligation is current.
Appellant's App. at 16-18.
On April 5, 2010, Father filed a motion to correct error, arguing that the trial court erred in calculating Father's arrearage because modification of his child support should have related back to September 7, 2005, the date Mother filed her petition for modification of child support rather than June 12, 2009, when Father filed his petition for modification of child support. Alternatively, he asserted that the child support modification should have related back to August 13, 2006, the date of the parties' notarized child custody and support agreement. Father also argued that the trial court erred in denying his request to emancipate T.S. Finally, Father challenged the trial court's decision to impute income to him of $500 per week. On July 12, 2010, the trial court issued its order denying Father's motion to correct error. Father now appeals.

*1183 Discussion and Decision
As a preliminary matter, we note that Mother did not file an appellee's brief. In that event, we do not undertake the burden of developing an argument on behalf of the appellee. In re Paternity of C.N.S., 901 N.E.2d 1102, 1105 (Ind.Ct.App.2009). Rather, we will reverse the trial court upon a showing of prima facie error. Id. "Prima facie error means at first sight, on first appearance, or on the face of it." Id. "If an appellant does not meet this burden, we will affirm." Id.

I. Effective Date of Child Support Modification
Pursuant to the trial court's order on emancipation, abatement, and modification of child support, Father's child support was $153.85 per week from February 2, 2002, until June 12, 2009, the effective date that his child support was modified to $117. Father opposes the trial court's choice of June 12, 2009, as the effective date of the modification of his child support obligation. He asserts that the appropriate date is either September 7, 2005, the date Mother filed her petition for modification of child support, or August 13, 2006, the date the parties executed their notarized child custody and support agreement. Father also contends that his child support obligation should be retroactively modified to zero.
A trial court's decision regarding child support will be upheld unless the trial court has abused its discretion. Kondamuri v. Kondamuri, 852 N.E.2d 939, 949 (Ind.Ct.App.2006). A trial court abuses its discretion when its decision is clearly against the logic and the effect of the facts and circumstances before the court or if the court has misinterpreted the law. Id. Additionally, our standard of review is governed by the trial court's decision in this case to enter findings of fact and conclusions of law. In such instances, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Ind. Trial Rule 52(A). Where, as here, the trial court enters such findings and conclusions sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial. Pardue v. Smith, 875 N.E.2d 285, 289 (Ind.Ct.App. 2007).
In general, the "trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify is filed, or any date thereafter." Haley v. Haley, 771 N.E.2d 743, 752 (Ind.Ct.App.2002). "The right to support lies exclusively with the child and the custodial parent holds the support in trust for the benefit of the child." Id. Indiana Code Section 31-16-16-6(b) provides:
A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due:
(1) after notice of the petition to modify the support order has been given either directly or through the appropriate agent to:
(A) the obligee; or
(B) if the obligee is the petitioner, the obligor; and
(2) before a final order concerning the petition for modification is entered.
"`The general rule in Indiana is that retroactive modification of support payments is erroneous if the modification relates back to a date earlier than the *1184 filing of the petition to modify.'" Becker v. Becker, 902 N.E.2d 818, 820 (Ind.2009) (quoting Donegan v. Donegan, 605 N.E.2d 132, 133 n. 1 (Ind.1992)). Accordingly, under the general rule prohibiting retroactive modification of child support, the trial court was not permitted to modify Father's child support to a date before his petition to modify child support was filed. However, there are two exceptions where retroactive modification is permitted. Father argues that the permanent change-of-custody exception applies here: an exception to the general rule prohibiting retroactive modification of child support exists "where the obligated parent takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time that a permanent change of custody is exercised." Whited v. Whited, 859 N.E.2d 657, 662 (Ind.2007).[5]
In its 2002 support order, the trial court ordered Father to pay child support of $153.85 per week. A specified sum of undivided support for several children is sometimes referred to as an "order in gross." Id. at 659. Father's child support order was an order in gross. "Where a parent is subject to an order in gross, however, this exception can be applied only where all children subject to the order permanently change custody." Id. at 663; see also Schrock v. Gonser, 658 N.E.2d 615, 616 (Ind.Ct.App.1995) (noting that parent must pay specified sum of undivided support for more than one child until the support payments are modified by court order or all are emancipated or twenty-one years old), trans. denied (1996). As to Father's argument that September 7, 2005, is the appropriate date to retroactively modify his child support, Father argues that the permanent change-of-custody exception applies because Mother filed a petition for modification and he permanently assumed custody of all three children.
Whited is instructive. There, Kenneth and Kathy had four children during their marriage. Upon their divorce, Kathy was awarded custody of the three children who gave rise to the parties' dispute in that case. Kenneth was ordered to pay $60 per week in undivided child support, an order in gross. In 1991, a new support order modified Kenneth's child support to $173. Between 1991 and 1993, one or two of the children would stay with Kenneth, but at least one child remained in Kathy's care. Kenneth would reduce his child support payments in accordance with the number of children in his care even though the support order did not provide for any reduction in payments. In 1993, the youngest child moved in with Kenneth, and Kenneth stopped making support payments. Kathy filed a motion to determine arrearage and enforce child support obligation. Our supreme court provided the following analysis:
The trial court held that Kenneth should be given credit for any time that any unemancipated child spent living with him. As a result, the court faced the nearly impossible task of determining. . . each child's living arrangements between 1991 and 1993. The court's reduction from 139 weeks to 71 weeks, though unexplained, apparently represented an attempt to credit Kenneth for the time that any child spent in his care. The uncertainty and unpredictability of such judicial determinations, however, are among the reasons for prohibiting retroactive modification.
*1185 Id. at 663 (citation omitted). The court concluded that because "at least one child dependent on Kenneth's support remained in Kathy's care," Kenneth was not permitted to reduce his payments under the order in gross.[6]Id. at 664.
Father concedes that his child support was an order in gross, which pursuant to Whited would prohibit any reduction in his child support obligation unless there were no children dependent on his support living with Mother. However, he argues that this case is distinguishable from Whited. Specifically, he contends that Mother's September 7, 2005, petition to modify had not been dismissed, and therefore it was still pending when the trial court held the hearing on November 6, 2009, and January 8, 2010.[7] He asserts that in Mother's petition, "she admits she no longer has custody of the three children, but rather that two of the three children were residing with Father." Appellant's Br. at 9. This is not an accurate statement of the content of Mother's petition, which states as follows:
2 children now live with [Father] and one child with [Mother]. The oldest [S.S.] will be 18 soon. We want the child support stopped since I have 1 child and he has 1 child to make it fair. He claims [T.S.] on his taxes 2006 and I claim [L.S.] 2006 and thereafter.
Appellant's App. at 45. Therefore, there was not a permanent change of custody of all three children, and therefore the change-of-custody exception does not apply.
Alternatively, Father urges us to find that the trial court erred in failing to modify Father's support obligation retroactive to August 13, 2006. He asserts that in "the parties' notarized statement of August 13, 2006, they confirm that none of the children resided with Mother as of that date . . . [and] confirmed that neither party was to pay support to the other." Appellant's Br. at 11. He contends that "the conduct of the parties, memorialized with their notarized agreement, constitutes a permanent change in custody, and thus an exception to the general rule prohibiting retroactive modifications of support." Id.
We disagree for several reasons. First, "An agreement to forego child support is unenforceable because the parent has no right to contract away the child's support benefits." Schrock, 658 N.E.2d at 616. Second, the notarized agreement does not state that none of the children resided with mother. Specifically, it states that T.S. and L.S. had gone to live with Father. It is silent as to where S.S. was living. The change-of-custody exception applies only where all children subject to the order permanently change custody. *1186 Whited, 859 N.E.2d at 663. Also, S.S. was only eighteen years old as of August 13, 2006. A parent's duty to pay child support continues until the child is twenty-one years of age or is emancipated. Ind.Code § 31-16-6-6; see also R.R.F. v. L.L.F., 935 N.E.2d 243, 249 (Ind.Ct.App.2010) ("[T]he provision in the parties' agreed entry whereby Father ceased child support payments upon E.F.'s eighteenth birthday was contrary to law and void."). There has been no showing that S.S. was emancipated. Additionally, there was not necessarily a permanent change of custody as to L.S. because at some point L.S. went back to live with Mother, as evidenced by Father's petition to modify custody. We conclude that the permanent change-of-custody exception to the rule against retroactive modification of child support is inapplicable. Accordingly, the trial court did not abuse its discretion in choosing June 12, 2009, as the effective date for modification of Father's child support.

II. Termination of Child Support for T.S.
Father contends that the trial court abused its discretion in denying his request to emancipate T.S. Initially, we note that Father and the trial court have misapprehended the issue. Father directs us to Indiana Code Section 31-16-6-6(a), which provides,
(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:
(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.
(2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.
(3) The child:
(A) is at least eighteen (18) years of age;
(B) has not attended a secondary school or postsecondary educational institution for the prior four (4) months and is not enrolled in a secondary school or postsecondary educational institution; and
(C) is or is capable of supporting himself or herself through employment.
In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.
Subsection 31-16-6-6(a) "`does not deal with `emancipation' of a child; it merely identifies the circumstances under which our legislature has determined a parent's obligation to pay child support should terminate.'" Redd v. Redd, 901 N.E.2d 545, 550 (Ind.Ct.App.2009) (quoting Carpenter v. Carpenter, 891 N.E.2d 587, 593 (Ind.Ct. App.2008)). Emancipation is a different basis for the termination of child support and is governed by Subsection 31-16-6-6(b).[8]
*1187 The real question addressed by the trial court and argued by Father is not whether T.S. is emancipated,[9] but rather whether the requirements of Section 31-16-6-6(a)(3) for termination of child support are satisfied. As the party seeking to terminate child support before the child turned twenty-one pursuant to 31-16-6-6(a)(3), Father bore the burden of establishing that the requirements were met. Butrum v. Roman, 803 N.E.2d 1139, 1146 (Ind.Ct.App.2004), trans. denied; see also Bales v. Bales, 801 N.E.2d 196, 198-99 (Ind.Ct.App.2004) (termination of Mother's child support obligation was precluded where Mother did not present any evidence to support allegation that C.B. was self-supporting), trans. denied.
Father notes that there is no dispute that T.S. was at least eighteen years old and had not been attending or enrolled in a program of post-secondary education for the four months prior to June 2009. His challenge focuses on the trial court's determination that he offered insufficient evidence that T.S. was capable of supporting herself. Father indicates that evidence in the record shows that T.S. was earning $8.50 per hour, which, he states, is $1.25 per hour more than the minimum wage. He asserts that the trial court had the ability to take judicial notice of the federal poverty level, and that T.S.'s income is above it. He contends that this is sufficient to show that T.S. can support herself. He further argues that the "evidence showed that [T.S.] was prepared to relocate from Mother's home, however, she elected to purchase an automobile instead of setting up an independent residence." Appellant's Br. at 13.
We are unpersuaded by Father's argument that the evidence establishes that T.S. is capable of supporting herself. The fact that she earns more than minimum wage does not, standing alone, establish that T.S. is capable of supporting herself. See Brancheau v. Weddle, 555 N.E.2d 1315, 1317-18 (Ind.Ct.App.1990) (rejecting father's claim that because child was employed at slightly better than minimum wage child was capable of supporting herself where child did not have medical insurance and needed about $3000 worth of immediate dental work to preserve her teeth and gums, did not have money to pay for such expenses, and child and her mother, with their incomes pooled, were unable to afford basic necessities). Likewise, the fact that her income is above the federal poverty level is not conclusive proof that T.S. is self-supporting. Nor does her decision to purchase an automobile and remain living with Mother, by itself, show that T.S. could have supported herself had she chosen not to purchase a vehicle. The *1188 record shows that T.S. works for a trucking company and that her shift is from midnight to 8:00 a.m. Tr. at 161. There is no evidence as to the availability of public transportation. Given that her shift begins at midnight, T.S. might not be able to get to the job site without a vehicle. In addition, there is no evidence as to the price of the vehicle, so it is impossible to assess whether it was a luxury purchase. We conclude that the trial court did not abuse its discretion in determining that Father failed to show that T.S. is capable of supporting herself. Accordingly, the trial court did not err in declining to terminate Father's child support for T.S.

III. Father's Child Support Obligation
At the time of the hearing, Father was unemployed and receiving $382 in unemployment benefits. To determine Father's child support obligation, the trial court imputed income to Father in the amount of $500 per week. Father challenges his child support obligation on three grounds, which we address in turn.
First, Father argues that it was error to impute income to him because "the trial court made no finding that Father was unemployed without just cause or for the purpose of evading a higher support amount." Appellant's Br. at 14 (emphases added). We observe that the trial court enjoys wide discretion in imputing income to ensure that the child support obligor does not evade his or her support obligation. Apter v. Ross, 781 N.E.2d 744, 761 (Ind.Ct.App.2003), trans. denied. With regard to potential income, the Indiana Child Support Guidelines provide in relevant part as follows:
If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. If there is no work history and no higher education or vocational training, the facts of the case may indicate that weekly gross income be set at least at the federal minimum wage level.
Ind. Child Support Guideline 3(A)(3). The Commentary to this Guideline provides:
c. Potential Income. Potential income may be determined if a parent has no income, or only means-tested income, and is capable of earning income or capable of earning more. Obviously, a great deal of discretion will have to be used in this determination. One purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support. Another purpose is to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed. However, attributing potential income that results in an unrealistic child support obligation may cause the accumulation of an excessive arrearage, and be contrary to the best interests of the child(ren). Research shows that on average more noncustodial parental involvement is associated with greater child educational attainment and lower juvenile delinquency. Ordering support for low-income parents at levels they can reasonably pay may improve noncustodial parent-child contact; and in turn, the outcomes for their children.
. . . .
. . . .
(2) When a parent has some history of working and is capable of entering the work force, but without just cause voluntarily *1189 fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income shall be included in the gross income of that parent. The amount to be attributed as potential income in such a case may be the amount that the evidence demonstrates he or she was capable of earning in the past. If for example the custodial parent had been a nurse or a licensed engineer, it may be unreasonable to determine his or her potential at the minimum wage level. Discretion must be exercised on an individual case basis to determine whether under the circumstances there is just cause to attribute potential income to a particular unemployed or underemployed parent.
Here, although the trial court did not specifically find that Father was unemployed without just cause or for the purpose of evading a higher support amount, it did find that Father was voluntarily unemployed. We observe that a trial court is presumed to know the law and apply it correctly. In re H.M.C., 876 N.E.2d 805, 808 (Ind.Ct.App.2007), trans. denied (2008). Additionally, it is clear that Child Support Guideline 3(A)(3) was brought to the trial court's attention. In his motion to correct error, Father argued to the trial court that its imputation of potential income was erroneous because the trial court failed to make a finding that he was unemployed without just cause or for the purpose of evading a higher support amount and quoted Child Support Guideline 3(A)(3). The trial court rejected Father's argument. Father concedes that he left his job voluntarily, albeit due to difficulties with his employer. The record shows that Father walked out on his job during an argument with his boss about exercising vacation time during winter break. Tr. at 118-19. We conclude that the evidence supports a finding that Father was voluntarily unemployed such that the trial court was within its discretion to impute potential income to Father. See In re Marriage of Turner v. Turner, 785 N.E.2d 259, 265-66 (Ind.Ct.App.2003) (rejecting argument similar to Father's; reasoning that while noncustodial parent was correct in stating that "the court did not find that he took a lower paying job to avoid paying child support," trial court's finding that he worked only part-time when he had skill and ability to work full-time based on his prior work history supported its conclusion that he was voluntarily underemployed).
Father next argues that the trial court abused its discretion in determining his potential income to be $500. He argues that the trial court considered only his employment and earning history and did not consider all the enumerated factors outlined in Child Support Guideline 3(A)(3). He contends that Mother and T.S. both have a high school education or equivalent, whereas he has no high school education or GED, and therefore any imputed income should not be greater than the income of Mother and T.S. The record shows that Father is an auto mechanic. He has special training beyond a high school education or its equivalent. He maintained continuous employment for seven years, earning $17.50 an hour in his area of expertise. The trial court found that for the years 2005, 2006, 2007, and 2008, Father earned on average $658 per week, which Father does not dispute. In determining his potential income to be $500, the trial court did recognize and take into account the high unemployment rate. Father cites no authority for the proposition that the trial court is required to make special findings as to each of the factors set forth in the Guidelines. The trial court has broad discretion in determining potential income, and imputing Father's *1190 potential income in the amount of $500 is not clearly against the logic and effect of the facts and circumstances before the trial court. We therefore find no abuse of discretion in the trial court's imputation of potential income in the amount of $500.
The last argument Father presents is that the trial court erred in determining his child support obligation without considering T.S.'s income. We agree. Indiana Code Section 31-16-6-6(3) provides that if the trial court finds that "the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated." Father notes that he "is earning unemployment income of $382.00 per week. [T.S.'s] weekly income is $340.00 per week. Despite the fact that the child earns only $42 less per week than her Father, the trial court did not deviate from the presumptive support amount for the two remaining, unemancipated children." Appellant's Br. at 13 (citations omitted). T.S. is partially supporting herself. Accordingly, the trial court abused its discretion in determining Father's child support without considering the extent to which T.S. was capable of supporting herself. Therefore, we reverse the trial court's child support obligation of $117 per week and remand with instructions to determine Father's child support obligation in light of T.S.'s income. In all other respects, we affirm.
Affirmed in part, reversed in part, and remanded.
KIRSCH, J., dissents with separate opinion.
BRADFORD, J., concurs.
KIRSCH, Judge, dissenting.
I respectfully dissent.
Following the dissolution of their marriage in 1998, Timothy Sexton (Father) and Donna Sedlak (Mother) managed to raise their three children with minimal court intervention. The children spent extensive time with both of their parents and, at various times, moved back and forth between their respective residences.
Initially, the parties agreed that and the court ordered that no support would be paid by either party. In 2002, Mother obtained an in gross support order for the three children. In September 2005, Mother asked the court to discontinue the support order because it was unreasonable due to a substantial and continual change in the circumstances. Thereafter, Father, Mother and children continued as they had previously, the children living with one or both parents at various times, and neither party paying or seeking child support from the other.
In short, Mother and Father cooperated in raising their children. There is no showing that either parent ever shirked his or her responsibilities, that the children at any time did not have their needs met or that either parent failed to contribute to the support of their children at or beyond the levels required by the guidelines.
It is against this background that the trial court's order holding the Father in contempt for non-payment of support in the amount of $28,357.15 must be viewed. The trial court's order calculates support under an order issued in 2002 that Mother herself informed the court was unreasonable in 2005. I believe such a ruling promotes formalism over fairness and legalism over common sense.
Prohibiting the retroactive modification of support, particularly of a support order in gross, has the potential to lead to absurd and unfair consequences, and our Supreme Court has recognized that doing so *1191 "may occasionally cause inequities." Whited v. Whited, 859 N.E.2d 657, 661 (Ind. 2007).[10] This case is one of such inequities. Father was ordered to pay the accrued support for three children even though (1) one child was emancipated, (2) Father made substantial in kind contributions to the support of one or more of the children during the extended times that they resided with him and (3) Mother herself long ago acknowledged that the 2002 support order was unreasonable and that returning in September 2005 to the original provisions of the dissolution decree providing that neither parent would pay support to the other was fair.
Here, however, the rule prohibiting retroactive modifications does not apply, because parties sought such a modification in 2005. That year, Mother filed a petition to modify the 2002 order and tendered an agreed entry on the petition. Although the trial court declined to enter the agreed entry, at no time did it rule upon the petition to modify and that petition has remained pending. Given that the parents had agreed to a modification of support that was acceptable to both over an extended period of time, that the modification provided for the reasonable support of their children, that the parties made a good faith effort to seek court approval of such modification, and that there has been no showing that Father has failed to contribute significantly to the support of the children, I believe the trial court abused its discretion in failing to make the modification of support retroactive to the date of filing of Mother's petition in 2005.
I would reverse the trial court's order and remand with instructions to modify the support order retroactive to the date of the filing of Mother's petition in September, 2005.
NOTES
[1] Although Mother's petition is in the record before us, the agreed entry is not.
[2] Father states that the hearing was set pursuant to an enforcement action initiated by the Marion County Prosecutor's Office under federal law. The CCS does not indicate why a hearing was set. The transcript shows that at some point the Title IV-D Child Support Division filed a petition to determine the State's arrearage. Tr. at 24. The State ultimately determined that there was no arrearage due and was not involved in any subsequent proceedings relevant to this appeal. Id. at 25.
[3] Father's petition for emancipation and to modify custody and support is not in the record before us. The June 12, 2009, filing date for Father's petition is used in the trial court's orders on Father's petition to modify custody and child support and Father's motion to correct error. We note, however, that the CCS shows that the petition was filed June 16, 2009. Appellant's App. at 10, 16, 31.
[4] The DRCB report indicates that Father did not participate in its custody assessment.
[5] The other exception is where the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the child support order. Whited, 859 N.E.2d at 662.
[6] We observe that the trial court in this case found that "Father is entitled to credit for periods in which he had de facto custody of one or two of the parties' children." Appellant's App. at 17 (Finding 10). Father's support obligation was an order in gross, and although the child support order provided for a 50% abatement if Father had all three children for seven consecutive days, it did not provide for abatement if Father had only one or two children. Pursuant to Whited, the trial court's decision to credit Father for the time he had only one or two children is arguably in error. However, this argument has not been raised on appeal.
[7] In the summary of argument in his appellant's brief, Father suggests that because Mother's motion was never dismissed, a modification retroactive to the date it was filed is perfectly appropriate under the law. Appellant's Br. at 5. In comparing this case with Whited, which he acknowledges addresses when child support orders in gross can be modified retroactive to a date before the filing of a petition to modify, he appears to abandon that route in his actual argument.
[8] Indiana Code Subsection 31-16-6-6(b) provides,

For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:
(1) has joined the United States armed services;
(2) has married; or
(3) is not under the care or control of:
(A) either parent; or
(B) an individual or agency approved by the court;
the court shall find the child emancipated and terminate the child support.
"[E]mancipation requires that (1) the child initiate the action putting itself outside the parents' control and (2) the child in fact be self-supporting." Redd, 901 N.E.2d at 550 (quotation marks and citation omitted); see also Dunson v. Dunson, 769 N.E.2d 1120, 1123-24 (Ind.2002) ("[S]ubsection (b)(3) requires that the child must in fact be supporting itself to be emancipated. The idea that children must be supporting themselves to be emancipated has been a part of Indiana case law since at least 1952."). Significantly, if a child is emancipated, the only option is to terminate child support, whereas Subsection 31-16-6-6(a)(3) permits modification of child support if the child is partially capable of self support.
[9] It is undisputed that T.S. was living with Mother and was therefore under her care and control.
[10] Retroactive modification is permitted when: (1) the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree, or (2) the obligated parent takes the child into his or her home, assumes custody, provides necessities, and exercises parental control for such a period of time that a permanent change of custody is exercised. See Whited, supra, 859 N.E.2d at 662.