**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRYAN L. CIYOU**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JULIE ANDREWS**
**BRIAN K. ZOELLER**
**SARAH T. STARKEY**
Cohen & Malad, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE PATERNITY OF: A.R. & P.H., | ) |
| | ) |
| By Next Friend, T.R., | ) |
| | ) |
| C.A.H. , | ) |
| | ) |
|     Appellant-Defendant, | ) |
| | ) |
|         vs. | ) No. 49A05-1111-JP-577 |
| | ) |
| T.R., | ) |
| | ) |
|     Appellee-Petitioner. | ) |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis Rosenberg, Judge
The Honorable Marie Kern, Commissioner
Cause No. 49C01-1005-JP-20376

**July 6, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

C.H. ("Father") appeals the trial court's calculation of child support owed to T.R. ("Mother"). We affirm.

## Issues

Father raises two issues, which we restate as:

    I.      whether the trial court properly calculated Mother's gross weekly income; and

    II.     whether the trial court's order regarding payment of child care costs is proper.

## Facts

Father and Mother lived together in Father's house, and their child, A.H.,[1] was born in May 2005. In 2007, A.H. began attending daycare at the Center for Young Children ("CYC"). Eventually, the parties' relationship deteriorated, and A.H. and Mother, who was pregnant with Father's child, moved out of Father's residence in March 2009. P.H. was born in July 2009 and has cystic hygroma.

After his birth, P.H. attended daycare at Shalom, but Mother wanted to transition him to CYC as soon as P.H. was old enough to attend CYC and as soon as there was a spot available for him. CYC is more expensive than Shalom. A.H. was scheduled to start kindergarten in the 2011-2012 school year with the YMCA providing before and after school care.

Mother filed a paternity action in May 2010. The trial court appointed a Level II Parenting Coordinator ("PC"). The parties agreed on custody and parenting time issues,

---

[1] A.H.'s name was changed during these proceedings from A.R. to A.H.

but they could not reach an agreement on financial issues, including child support and child care issues. Specifically, the parties disagreed on whether to include Mother's employment-related bonuses in her gross weekly income. The PC recommended that P.H. attend CYC. The Father agreed that P.H. would attend CYC after a spot was available for him, but Father argued that Mother should pay the extra cost of sending P.H. to CYC.

After the final hearing, the trial court entered sua sponte findings of fact and conclusions thereon. The trial court found that Mother's gross weekly income was $1,277.14 per week and that Father's gross weekly income was $1,015.38. The trial court declined to include Mother or Father's bonuses in the calculation of their gross weekly incomes. As for child care, the trial court ordered Father to pay a percentage of child care costs to Mother as part of his child support. The trial court ordered that P.H. attend CYC in the summer of 2011 or "as the facility has his spot open." Appellant's App. p. 12. The trial court ordered the parties to recalculate child support when P.H. transfers to CYC to include the increase in daycare costs. Specifically, the trial court ordered the parties to "cooperate in modifying child support as set forth herein based on Father's increased parenting time with [P.H.], [P.H.'s] increased daycare and transition to CYC." Id. at 23. Father now appeals.

**Analysis**

Father's arguments concern the amount of child support he was ordered to pay. "A trial court's calculation of child support is presumptively valid." Young v. Young, 891 N.E.2d 1045, 1047 (Ind. 2008). A trial court's decision regarding child support will

3

be upheld unless the trial court has abused its discretion. <u>Sexton v. Sedlak</u>, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), <u>trans. denied</u>. A trial court abuses its discretion when its decision is clearly against the logic and the effect of the facts and circumstances before the court or if the court has misinterpreted the law. <u>Id.</u> Additionally, our standard of review is governed by the trial court's decision in this case to enter findings of fact and conclusions of law. <u>Id.</u> In such instances, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." <u>Id.</u> (quoting Ind. Trial Rule 52(A)). It appears that the trial court issued the findings and conclusions sua sponte, and where the trial court enters findings and conclusions sua sponte, the specific findings control only as to the issues they cover. <u>Id.</u> A general judgment standard applies to any issue upon which the trial court has not entered findings, and we may affirm a general judgment on any theory supported by the evidence adduced at trial. <u>Id.</u>

### *I. Bonuses*

Father argues that the trial court erred when it excluded Mother's bonuses from her gross weekly income. The Indiana Child Support Guidelines define gross weekly income, which is an element of the child support calculation, as:

> actual Weekly Gross Income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon "in-kind" benefits. Weekly Gross Income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from . . . bonuses . . . .

Child Support G. 3(A)(1). The Commentary to the Guidelines provides:

4

> There are numerous forms of income that are irregular or nonguaranteed, which cause difficulty in accurately determining the gross income of a party. Overtime, commissions, bonuses, periodic partnership distributions, voluntary extra work and extra hours worked by a professional are all illustrations, but far from an all-inclusive list, of such items. Each is includable in the total income approach taken by the Guidelines, but each is also very fact-sensitive.
>
> Each of the above items is sensitive to downturns in the economy. The fact that overtime, for example, has been consistent for three (3) years does not guarantee that it will continue in a poor economy. Further, it is not the intent of the Guidelines to require a party who has worked sixty (60) hour weeks to continue doing so indefinitely just to meet a support obligation that is based on that higher level of earnings. Care should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled.
>
> When the court determines that it is not appropriate to include irregular income in the determination of the child support obligation, the court should express its reasons. When the court determines that it is appropriate to include irregular income, an equitable method of treating such income may be to require the obligor to pay a fixed percentage of overtime, bonuses, etc., in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, quarterly) rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation.

Child Supp. G. 3(A), cmt. (2)(b).

At the final hearing, Father argued that Mother's employment bonuses should be included in her gross weekly income. Mother received a bonus of $6,396.68 in 2010 and a bonus of $7,886.00 in 2011. The bonuses are performance based and are not guaranteed. The trial court here determined that those bonuses and future bonuses should

5

not be included in the calculation of Mother's income. In support of its determination to exclude the bonuses, the trial court found:

> 86. The Court bases this decision on the fact that Father benefited from his family paying his attorney fees in this litigation in the amount of approximately $12,000 as of the last day of testimony, and he received bonus income as evidenced in prior hearings.
>
> 87. After considering testimony and case law, the Court declines to order either party to pay the other a percentage of their future bonus incomes for the following reasons:
>
> > a. Father failed to show the Court that he had an economic need for additional financial assistance while exercising his parenting time. The Court notes that Father has paid his car loan in full providing him with more disposable income.
> >
> > b. The children will benefit from the receipt of bonus income by both parents in their respective homes.
> >
> > c. Mother has demonstrated that it would be inherently unjust if the Court were to order her to pay a percentage of her bonus income to Father as he effectively would be contributing an extremely minimal amount of support for the children.

Appellant's App. pp. 26-27. The trial court concluded that "Father is not entitled to Mother's bonus income for 2009 and 2010 as he too received bonus income and he received at least $12,000 from his family during this period to pay for his litigation expenses in this matter." Id. at 34. The trial court then ordered: "Each party shall retain

6

their bonuses received and neither party shall receive a portion of the other's bonus." Id. at 36.

According to Father, the trial court's findings demonstrate "no valid legal basis for deviation." Appellant's Br. p. 13. Father challenges the trial court's Finding 87(a), (b), and (c), but Father does not challenge the trial court's use of Father's bonuses and payment of his attorney fees by his family as a basis for the deviation. Although Mother received bonuses, Father also apparently received bonuses through his employment. Additionally, Father's family paid at least $12,000 in attorney fees for him. Given the parties' similar financial situations and these factors, the trial court did not err when it determined that inclusion of Mother's bonuses in her gross weekly income would be unjust. We cannot say that the trial court's determination to exclude both parties' bonuses from their gross weekly income is clearly erroneous.

## II. Child Care

Next, Father argues that the trial court's order regarding payment of child care costs is erroneous. The Indiana Child Support Guidelines address child care costs and provide:

> Child care costs incurred due to employment or job search of both parent(s) should be added to the basic obligation. It includes the separate cost of a sitter, day care, or like care of a child or children while the parent works or actively seeks employment. Such child care costs must be reasonable and should not exceed the level required to provide quality care for the children. Continuity of child care should be considered. Child care costs required for active job searches are allowable on the same basis as costs required in connection with employment.

7

The parent who contracts for the child care shall be responsible for the payment to the provider of the child care.

Child Supp. G. 3(E)(1). The Commentary provides:

One of the additions to the basic child support obligation is a reasonable child care expense incurred due to employment, or an attempt to find employment. This amount is added to the basic child support obligation in arriving at the total child support obligation.

Work-related child care expense is an income-producing expense of the parent. Presumably, if the family remained intact, the parents would treat child care as a necessary cost of the family attributable to the children when both parents work. Therefore, the expense is one that is incurred for the benefit of the child(ren) which the parents should share.

Child Supp. G. 3(E), cmt. 1.

First, Father argues that he simply does not have enough money and that CYC is not "affordable/reasonable given the parties' finances." Appellant's Br. p. 18. The trial court concluded that the "daycare/preschool costs outlined by Mother are reasonable and should be shared by both parties as the care provides consistency, stability and continuity for the children and this is in the best interests of the children." Appellant's App. p. 30.

We note that, at the start of the hearing on these matters, the parties stipulated as to several items, including that P.H. would attend CYC. Father objected only to paying the increased amount of daycare. See Tr. pp. 3-4. "A party cannot change its theory and on appeal argue an issue that was not properly presented to the trial court." Carmichael v. Siegel, 754 N.E.2d 619, 634 (Ind. Ct. App. 2001). Given his stipulation, Father cannot now argue that the trial court erred by ordering that P.H. attend CYC.

8

As for the increased cost of CYC, Mother presented evidence that the weekly difference for Father between CYC and Shalom was only $24.33 for CYC Weeschool, $14.60 for CYC preschool, and $9.52 for CYC Pre-K. Father testified that cheaper daycare options were available, but he presented no evidence regarding those options. Further, A.H. was scheduled to start kindergarten in the 2011-2012 school year, which presumably would significantly reduced child care costs for her. Given the evidence presented, we cannot say that the costs associated with using CYC are unreasonable.

Father also takes issue with the trial court's Findings 70 through 73, which provide:

> 70. A Level II Parenting Coordinator Order was approved on December 6, 2010.
>
> 71. The parties submitted the issue of [P.H.'s] daycare to the PC and a binding recommendation was presented to the Court on or about April 8, 2011.
>
> 72. Pursuant to the PC order, if either parent objects to the binding recommendation, that party shall file a written motion requesting a hearing within ten (10) days from the recommendation being filed with the Court.
>
> 73. Father failed to provide a written objection.

Appellant's App. p. 24. Father argues that he did not waive his objection to P.H. attending CYC by failing to file an objection to the PC's recommendation. Regardless of Father's failure to object to the PC recommendation, Father cannot now argue that he objects to P.H. attending CYC because he stipulated at the trial that P.H. would attend CYC.

Finally, Father takes issue with the trial court's Findings 75 and 76, which provide:

> 75. The parties shall recalculate child support when [P.H.] transfers to CYC to include the increase in daycare.
>
> 76. The parties shall pay their income shares toward any work related daycare for [A.H.] that is needed as a result of her attending a year-round school beginning in August 2011 that exceeds the amount calculated for purposes of establishing support in January 11, 2011.

Appellant's App. pp. 24-25. The trial court concluded that P.H. would attend CYC and "the parties shall pay their income shares toward the cost. The cost shall be calculated into the support worksheet when modified." Id. at 31. The trial court ordered the parties to "recalculate child support as set forth above in the Court's findings when Father's parenting time increases with [P.H.] and when [P.H.] transitions to CYC daycare." Id. at 32. The trial court also ordered the parties to "cooperate in modifying child support as set forth herein based on Father's increased parenting time with [P.H.], [P.H.'s] increased daycare and transition to CYC." Id. at 35.

Father contends that modification of child support is governed by Indiana Code Section 31-14-11-8[2] and that there is no indication the changes ordered by the trial court

---

[2] Indiana Code Section 31-14-11-8 provides:

A support order may be modified or revoked upon a showing:

(1) of a substantial change in circumstances that makes the terms unreasonable; or

(2) that:

(A) a person has been ordered to pay an amount in child support that differs by more than twenty percent (20%)

10

would meet the statutory requirements. [3]  Father argues that the trial court could not order an automatic prospective change in the child support.[4]

We note that, in addition to ordering the parties to cooperate to modify the child support as a result of child care cost changes, the trial court also ordered the parties to cooperate in modifying the child support as a result of Father's increased parenting time with P.H.  However, Father does not challenge the automatic prospective changes that would result from the increased parenting time and decreased child support.  Child care costs for A.H. would also decrease as a result of her attending kindergarten, but Father does not challenge those prospective changes either.

We addressed a similar situation in R.R.F. v. L.L.F., 956 N.E.2d 1135, 1141-42 (Ind. Ct. App. 2011).  There, the trial court ordered the father to reimburse the mother 35.93% of any tax credit subsidy he receives as a result of paying their son's college expenses and the mother to reimburse the father 64.07% of any tax credit subsidy she received.  On appeal, the father argued that "the dissolution court's order on remand

from the amount that would be ordered by applying the child support guidelines; and

(B)    the support order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[3] Father also argues that the prospective changes violate Article 1, Section 12 of the Indiana Constitution, but Father cites no authority for that proposition and provides no analysis of the issue.  As a result, the argument is waived.  See Ind. Appellate Rule 46(A)(8)(a) (requiring citation to authority and cogent reasoning in an appellant's brief).

[4] Father argues that "Indiana law has long prohibited prospective and automatic modifications of child support . . . ."  Appellant's Br. p. 23.  In support of this argument, Father cites Brown v. Brown, 581 N.E.2d 1260, 1264 (Ind. Ct. App. 1991).  However, in Brown, this court held: "Indiana law does not prohibit the issuance of prospective support orders in marriage dissolution cases."  Brown, 581 N.E.2d at 1264.

11

amounts to an automatic, year-by-year modification of the parties' relative contributions to E.F.'s college expenses, and that such an automatic modification is improper." R.R.F., 956 N.E.2d at 1141-42. We disagreed and held:

> Although the actual dollar amount payable by Mother to Father (and vice versa) pursuant to the dissolution court's order on remand may vary from year to year based on, among other things, changes in the parties' income, E.F.'s college enrollment status, and amendments to the federal tax laws, the percentage of the tax credit owed will remain the same. That is, unless the order is amended, Mother will always be required to reimburse Father for 64.07% of any applicable tax credit subsidy she receives, and Father will always be required to reimburse Mother for 35.93% of any applicable tax credit subsidy he receives. Thus, there is no automatic modification of the parties' contributions to E.F.'s college expenses.

Id. at 1142.

Additionally, our supreme court held in Lambert v. Lambert, 861 N.E.2d 1176, 1182 (Ind. 2007), that a prospective child support order was proper. There, the court held that a trial court "could prospectively order that child support return to the pre-incarceration level upon a prisoner's release because following release, the parent is theoretically able to return to that wage level." Lambert, 861 N.E.2d at 1182. The court noted that "[s]uch an order has multiple benefits." Id. "First, it encourages non-custodial parents to track carefully their support obligation, as it would require an incarcerated parent to seek modification of the order upon their release." Id. "Second, it relieves the custodial parent from the added burden of tracking the expected release date of the obligor and filing for modification upon that release." Id.

12

Similarly, here, the trial court was attempting to relieve the parties of the burden of filing repeated motions for modification. Although the actual dollar amount payable by Father may vary due to changes in child care costs, the percentage would remain a function of their income shares. At times the arrangement will result in an increase in Father's child support, but at other times, Father's child support obligation will decrease. Under these circumstances, we cannot say that the trial court erred.[5] See also Kyle v. Kyle, 582 N.E.2d 842, 847-48 (Ind. Ct. App. 1991) (holding that the trial court did not abuse its discretion by ordering the father to pay a share of work-related summer child care "provided for outside the guideline computation" where the cost of the care was unknown at the time of the trial), trans. denied.

## Conclusion

The trial court's determination of Mother's gross weekly income is not clearly erroneous, and the trial court's order concerning child care costs is not clearly erroneous. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.

---

[5] Father also raises a concern regarding his income withholding order and payments to the Indiana State Central Collection Unit. According to Father, there is no way for the parties to automatically change the income withholding order. We note that the trial court ordered the parties to "cooperate in modifying child support." Appellant's App. p. 35. Clearly, the parties could cooperate in determining the appropriate child support based on the changes in child care costs and parenting time and submit those proposed changes to the trial court for approval and a new income withholding order.