**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 06 2014, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**M.B.**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**STEVEN F. FILLENWARTH**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| M.B., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | ) No. 41A04-1305-JP-257 |
| | ) |
| A.V., | ) |
| | ) |
| Appellee. | ) |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Kevin M. Barton, Judge
Cause No. 41D01-9610-JP-3

**February 6, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

M.B. ("Mother") appeals the trial court's modification of child support owed by A.V. ("Father"). We affirm.

## Issues

Mother raises four issues, which we consolidate and restate as:

> I.      whether the trial court properly modified the weekly child support owed by Father;
>
> II.      whether the trial court properly awarded the dependent tax exemption to Father for 2012 and 2013; and
>
> III.      whether the trial court properly refused to order Father to reimburse Mother for the cost of summer camps.

## Facts

Mother and Father have one child, C.V., who was born in December 1995. Paternity was established in 1997, and Mother was awarded sole legal and physical custody. At that time, Father had a weekly gross income of $3,187.00. Mother had a weekly gross income of $565.00. Father was ordered to pay child support of $346.00 per week. The trial court also ordered that Father's child support obligation be $311.00 per week beginning January 9, 1998. Mother was awarded the ability to claim C.V. as a dependent for tax purposes. The trial court ordered Father to pay 85% of uninsured medical expenses in excess of $1,008.00. In 2001, C.V. was diagnosed with juvenile diabetes, and she requires significant medical care.

In March 2011, Father filed a petition for modification of his child support in part because his income had substantially declined. In August 2011, Mother also requested a

2

modification for child support to include secondary school educational expenses, health insurance, transportation expenses, and a cell phone for C.V. A hearing was held on January 10, 2013.

Evidence was presented that Father has an interest in five entities that own or manage pizza restaurants. Father's businesses experienced a significant downturn in 2011. Father's most profitable restaurant, which was located in the City Market in downtown Indianapolis, was closed in April 2011. He has filed a lawsuit against the City of Indianapolis as a result of the closing, and that litigation is pending. Another of the restaurants at the Adrian Mall closed in April 2012. Father eventually went to work for his brother at a restaurant in Franklin. In 2011, Father's income was $20,018.00, and his adjusted gross income was $7,597.00. His gross income was $252.00 a week in 2011. In 2012, Father's income was $47,586.00, or $915.00 per week.

The trial court entered findings of fact and conclusions thereon. The trial court found that Father had "suffered a substantial reduction in income since 1997." App. p. 28. After adjustments for excessive depreciation and unemployment benefits, the trial court concluded that Father's weekly gross income for 2011 was $357.00 and that his weekly gross income for 2012 was $1,200.00. The trial court modified Father's child support obligation to $57.00 per week for March 28, 2011, through December 31, 2011, and $166.00 per week beginning January 1, 2012. Father also requested a finding that he had paid excess child support, but the trial court noted that no evidence regarding the payment of child support between January 2, 2001, and March 28, 2011, was presented. Consequently, the trial court was unable to determine whether Father overpaid child

3

support. The trial court also ordered Father to pay 46% of C.V.'s tuition for her private high school and to reimburse Mother for her prior payments of the tuition. The trial court denied Mother's request for Father to contribute to transportation and cell phone expenses. The trial court ordered Father to pay $19,326.20 in uninsured medical expenses. As for the tax exemption, the trial court ordered that Father was entitled to the tax exemption for 2012, 2013, and 2014.

Mother and Father each filed motions to correct error. The trial court then entered an order partially granting the motions. The trial court ordered that Mother was entitled to the tax exemption for 2014. The trial court also concluded that the summer diabetes camps that C.V. attended were not medical expenses and removed those costs from the list of uninsured medical expenses. The trial court then ordered Father to pay $15,628.70 in uninsured medical expenses. Mother now appeals.

**Analysis**

Mother appeals the trial court's calculation of child support. "A trial court's calculation of child support is presumptively valid." Young v. Young, 891 N.E.2d 1045, 1047 (Ind. 2008). A trial court's decision regarding child support will be upheld unless the trial court has abused its discretion. Sexton v. Sedlak, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), trans. denied. A trial court abuses its discretion when its decision is clearly against the logic and the effect of the facts and circumstances before the court or if the court has misinterpreted the law. Id. Additionally, our standard of review is governed by the trial court's decision in this case to enter findings of fact and conclusions thereon. Id. In such instances, we "shall not set aside the findings or judgment unless

4

clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Id. (quoting Ind. Trial Rule 52(A)). It appears that the trial court issued the findings and conclusions sua sponte, and where the trial court enters findings and conclusions sua sponte, the specific findings control only as to the issues they cover. Id. A general judgment standard applies to any issue upon which the trial court has not entered findings, and we may affirm a general judgment on any theory supported by the evidence adduced at trial. Id.

## I. Weekly Child Support

Mother argues that the trial court erred by modifying Father's child support to $57.00 per week for March 28, 2011, to December 31, 2011, and to $166.00 per week effective January 1, 2012. At the time the petitions were filed and the trial court issued its orders, the modification of a support order in the context of a paternity action was governed by Indiana Code Section 31-14-11-8, which provided:

> A support order may be modified or revoked upon a showing:
>
> (1)  of a substantial change in circumstances that makes the terms unreasonable; or
>
> (2)  that:
>
>   (A)  a person has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>
>   (B)  the support order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

5

This statute was later repealed by P.L. 207-2013, §§ 24-40, effective May 9, 2013.[1]

Mother's argument centers on the trial court's calculation of Father's weekly gross income. Mother argues that, despite the decreases in Father's income in 2011 and 2012, Father still had substantial assets. Mother points out that, in 2011, Father sold $50,937.00 of assets "presumably to support his own obligations," that Father's house does not have a mortgage, and that Father contributed $233,000.00 to his failed restaurant. Appellant's Br. p. 6.

The Indiana Child Support Guidelines define "weekly gross income" as:

---

[1] Currently, the modification of a child support order in the context of paternity is governed by Indiana Code Section 31-14-11-2.3, which provides: "A child support order issued under this chapter is subject to the provisions in IC 31-16-6 through IC 31-16-13." Indiana Code Section 31-16-8-1 provides:

(a) Provisions of an order with respect to child support or an order for maintenance (ordered under IC 31-16-7-1 or IC 31-1-11.5-9(c) before their repeal) may be modified or revoked.

(b) Except as provided in section 2 of this chapter, modification may be made only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

(c) Modification under this section is subject to IC 31-25-4-17(a)(6).

actual Weekly Gross Income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon "in-kind" benefits. Weekly Gross Income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, inheritance, prizes, and alimony or maintenance received from other marriages.

Ind. Child Support Guideline 3(A). With respect to Father's income in 2011 and 2012, the trial court found:

11.     Father did not directly explain how he was able to be current on his financial obligations notwithstanding his limited income. Mr. McClary, an accountant for Father and the corporations in which Father owns an interest, testified that he has observed that his clients in the accounting practice are using the proceeds of liquidated assets to pay for current living expenses as a result of the current economic recession so as to avoid a loss of living standard, however, he offered no personal knowledge of Father's situation. Father's 2011 federal income tax return showed that Father reported $50,937.00 from the sale of assets.

* * * * *

13.     Mr. McCleary [sic] testified the [sic] one of the corporations in which Father owns an interest, Enzo 14, sustained a significant loss in 2011 and that there were "substantial" capital contributions to Enzo 14 to fund the losses.

14.     Mother notes that Mr. McClary's computations are based upon the bookkeeping entries made by an employee of the corporations in which Father owns an interest, who is related to Father. However, no evidence was presented that would show the figures to

7

be incorrect. Mr. McClary testified that he had found no reason not to trust the figures. Mother also notes that a sizeable portion of the revenue in the restaurant business comes from cash sales, which raises the possibility of under reporting income. However, no evidence was presented that income had been under reported.

15. From the evidence presented, the Court concludes that Father has suffered a substantial reduction in income since 1997.

App. pp. 28-29. The trial court then increased Father's reported income by excluding fifty percent of the depreciation that had been claimed on his tax returns. Ultimately, the trial court concluded that Father's weekly gross income for 2011 was $357.00 and that Father's weekly gross income for 2012 was $1,200.00. Mother disputed this finding in her motion to correct error, and the trial court again addressed the issue. The trial court did not find "that evidence was submitted to the Court at hearing of the value of [Father's] financial resources upon which the Court could base an order." Id. at 38.

Although Mother claims that Father still had substantial assets despite his decreased income, Mother presented no evidence to support these claims. Innuendo is simply not enough for this court to say that the trial court's findings were clearly erroneous. Further, by the parties' agreement, Father did not testify at the hearing. His attorney merely gave a summary of Father's circumstances. Mother agreed to this procedure and, consequently, was unable to cross-examine Father regarding his assets. Moreover, Mother did not submit a proposed child support order worksheet.[2] Under

---

[2] Mother also argues that the modification "immediately created an overpayment of child support owed to Father by Mother of approximately $15,169.00." Appellant's Br. p. 10. However, the trial court

these circumstances, Mother has failed to demonstrate that the trial court's findings and conclusions regarding Father's weekly gross income for 2011 and 2012 are clearly erroneous.

## II. Tax Exemption

Next, Mother argues that the trial court erred by awarding the tax exemption to Father for 2012 and 2013. The Indiana Child Support Guidelines do "not take into consideration the awarding of the income tax exemption. Instead, it is recommended that each case be reviewed on an individual basis and that a decision be made in the context of each case." Child Supp. G. 9. "The noncustodial parent must demonstrate the tax consequences to each parent as a result of releasing the exemption and how the release would benefit the child(ren)." Id. In determining when to order a release of exemptions, the Guideline recommends that, at minimum, the following factors be considered:

> (1) the value of the exemption at the marginal tax rate of each parent;
>
> (2) the income of each parent;
>
> (3) the age of the child(ren) and how long the exemption will be available;
>
> (4) the percentage of the cost of supporting the child(ren) borne by each parent;
>
> (5) the financial aid benefit for post-secondary education for the child(ren); and

specifically noted that no evidence regarding the payment of child support between January 2, 2001, and March 28, 2011, was presented. Consequently, the trial court did not find that Father overpaid child support.

9

>          (6)      the financial burden assumed by each parent under the
>                   property settlement in the case.

Id.; see also Ind. Code § 31-16-6-1.5.

Here, the trial court noted that Mother had received the tax exemption from 1997 through 2011, "notwithstanding Father's substantially higher income as determined from the 1997 Findings." App. p. 33. Consequently, the trial court awarded the tax exemption to Father for 2012, 2013, and 2014. However, upon reconsideration after the parties filed motions to correct error, the trial court found:

> Upon reassessment of the provisions of Indiana Code 31-16-[6]-1.5, the Court determines that it gave undue weight to the past application under the 1997 Order and insufficient consideration to other factors identified under Indiana Code 31-16-[6]-1.5. Consequently, the Court does find that the prospective award of the tax exemption should be divided more closely in accordance with the current income as opposed to the past income.

Id. at 39. The trial court then gave Mother the tax exemption for 2014.

According to Mother, the trial court erred by awarding Father the tax exemption for 2012 and 2013. Mother contends that she should have been awarded the exemptions because Father has little contact with C.V. and Mother has previously paid tuition and uninsured health care expenses without help from Father. Although Mother asserts that the factors weigh "heavily" in her favor, she makes no analysis of any individual factors. Appellant's Br. p. 12. The record shows that Mother claimed the tax exemption for all previous years and was granted the tax exemption for 2014. Father was only granted the tax exemption for 2012 and 2013. Without an analysis of the relevant factors, we simply cannot say Mother has shown that the trial court's conclusion was clearly erroneous.

10

### III. Summer Camps

Mother next argues that the trial court erred by excluding C.V.'s summer diabetes camps from the calculation of uninsured medical expenses. The trial court noted that, under Guideline 8 of the Indiana Child Support Guidelines, summer camps "are treated as an extraordinary educational expense which are not included in a base child support obligation." App. pp. 40-41. Because Father has not been ordered to pay extraordinary expenses, the trial court found that, in order for Father to be "subject to contribution for such expenses, the expenses must qualify as a medical expense." Id. at 41. However, the trial court did not "find that there is a preponderance of the evidence that the primary purpose of the camps is medical or informational." Id. Rather, the documents submitted during the hearing indicated that "the camps are for children with diabetes and have medical support available for the children" but "the purpose of the camps is recreational." Id. Consequently, the trial court concluded that the camps were extraordinary expenses rather than uninsured medical expenses and that Father was not required to contribute to those expenses.

On appeal, Mother argues Father failed to present evidence that the camps were not medical expenses. However, we held in Tigner v. Tigner, 878 N.E.2d 324, 328-29 (Ind. Ct. App. 2007), that when uninsured medical expenses are challenged, the party seeking the contribution has the burden of showing that the expenses were reasonable and necessary. Consequently, Mother had the burden of demonstrating that the summer camps qualified as medical expenses, and Mother presented no evidence that the purpose of the camps was medical rather than recreational.

11

Mother also argues that, regardless of whether the camps were medical expenses, Father should bear the burden of part of the expenses. Although it might be equitable for Father to pay for a portion of the summer camps, we are required to follow the Child Support Rules and Guidelines and the relevant statutes. Mother cites no authority to demonstrate that Father is required to contribute to extraordinary expenses. We cannot say that the trial court erred when it denied Mother's request that Father contribute to the cost of the summer camps.

## Conclusion

Mother has failed to demonstrate that the trial court's child support order is clearly erroneous, that the trial court erred by granting the tax exemption to Father for 2012 and 2013, or that the trial court erred by denying her request that Father pay for a portion of the summer camps. We affirm.

Affirmed.

ROBB, J., and BROWN, J., concur.